[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14176

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 2, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00257-CR-3-SLB-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY FRANK YARBROUGH,
DARRYL DWAYNE RUSSELL,
TADRIC LAVOL BROWN,
a.k.a. T-Money,
a.k.a. Tadrick Lavol Brown,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(January 2, 2008)**

Before BIRCH, CARNES and COX, Circuit Judges.

PER CURIAM:

Tadric Lavol Brown, Daryl Dwayne Russell, and Larry Frank Yarbrough appeal their convictions for conspiring to possess and distribute cocaine in violation of 21 U.S.C. § 846. Russell also appeals his conviction for possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and Brown also appeals his sentence.

**I.**

In January 2004 the Houston Police Department intercepted a Federal Express package addressed to a house in Florence, Alabama, which contained approximately three kilograms of cocaine. The Houston Police notified the Drug Enforcement Administration. A DEA agent assigned to investigate the matter planted a monitoring device inside the package, removed the cocaine, replaced it with sugar, and sent the package along to its destination in Alabama. Although the monitoring device failed, the controlled delivery was a success. The DEA arrested Cleo Barnett, the owner of the house, as well as James Watson, the person who signed for the FedEx package. Barnett and Watson cooperated with the DEA, and information they provided led to the arrests of Brown, Russell, and Yarbrough.

In June 2005 a grand jury returned an indictment charging Brown, Russell, and Yarbrough, along with eighteen other individuals, with conspiracy to possess

and distribute cocaine and marijuana. According to the indictment, the conspiracy began in January 1999 and continued through June 2005. The indictment also charged Russell with possessing cocaine with the intent to distribute it, a charge stemming from the drugs seized as part of the January 2004 controlled delivery. A superseding indictment returned in August 2005 contained the same charges, but added one defendant.

Brown, Russell, and Yarbrough's case proceeded to a jury trial on January 5, 2006. In its case in chief, the government presented testimony from cooperating co-conspirators, linking Brown, Russell, and Yarbrough to each other and to the distribution of large quantities of cocaine. Each defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government's evidence did not establish the existence of a single conspiracy and that the evidence was insufficient to convict them of the charged conspiracy. The district court denied their motions.

The jury convicted Brown, Russell, and Yarbrough on the conspiracy charge and Brown on the possession with intent to distribute charge. The district court imposed the statutory mandatory minimum sentence, life imprisonment, on Russell. Brown was sentenced to 121 months imprisonment, and Yarbrough

received a 188 month prison sentence. All three appeal their convictions, and Brown also appeals his sentence.

## II.

Each of the defendants contend that the district court erred in denying their Rule 29 motions because, in their view, the evidence presented at trial established the existence of multiple conspiracies instead of the single conspiracy charged in the indictment. They also argue that the evidence the government presented was insufficient to support their convictions.

We review de novo sufficiency of the evidence claims. United States v. Anderson, 289 F.3d 1321, 1325 (11th Cir. 2002). This "standard of review is stacked in the government's favor." United States v. Moore, 504 F.3d 1345, 1348 (11th Cir. 2007); see also United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) ("We view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." (internal citations and quotation marks omitted)).

### A.

In order to prevail on their first contention, Brown, Russell, and Yarbrough must show that there was a material variance between the conspiracy proven at trial and the conspiracy charged in the indictment. United States v. Calderon, 127 F.3d 1314, 1327 (11th Cir. 1997). They must also show that any variance was substantially prejudicial. Id. They can do neither.

To assess whether the evidence presented at trial established a single conspiracy or multiple conspiracies, we consider: (1) the existence of a common goal; (2) the nature of the underlying scheme; and (3) the overlap of the participants. Id. at 1317. The government need not show that each conspirator was aware of his co-conspirators existence or activities. United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir.), reh'g & reh'g en banc denied, ___ F.3d ___, No. 05-15808 (11th Cir. July 27, 2007) (unpublished table decision).

The common goals of the alleged conspiracy are self-evident—distributing cocaine in Alabama and maximizing profits at each level of distribution. Similarly, the nature of the scheme and relationship of the conspirators are also clear. James Edwards testified at trial that Russell would pool money with him to purchase cocaine from Texas, and that he brought it back to Alabama, divided it into resale quantities, and sold it to local dealers. Bryant Russell, Russell's cousin, testified that Yarbrough would also pool money with Russell to buy cocaine. Watson

testified that he delivered resale quantities of cocaine to Brown on behalf of Russell. This evidence, which is representative of the testimony presented over the course of the trial, was enough for the jury to reasonably conclude that a single conspiracy existed.

Even if Brown, Russell, and Yarbrough could demonstrate that a variance existed, they cannot show that it substantially prejudiced them. To demonstrate prejudice, they would have to show: "1) that the proof at trial differed so greatly from the charges that [they were] unfairly surprised and [were] unable to prepare an adequate defense; or 2) that there [were] so many defendants and separate conspiracies . . . that there is a substantial likelihood that the jury transferred proof of one conspiracy to a defendant involved in another." Calderon, 127 F.3d at 1328.

The defendants have done neither. None of the defendants has persuaded us that his trial strategy would have differed if the indictment had alleged multiple conspiracies. Instead, we are convinced that each defendant's strategy would have been exactly the same because the individual conspiracies would have involved the same elements of proof and the same evidence. Moreover, although the alleged conspiracy involved numerous conspirators over a long period of time, each conspirator's role fell into an identifiable category. In Russell and Yarbrough's

6

case, the evidence established that they were financiers and organizers. The evidence against Brown established that he was a reseller. Given the relative simplicity of the scheme, we do not think it likely that the jury transferred proof of one conspiracy to a defendant involved in another. Finally, the district court gave a strongly-worded instruction to the jury, which we must presume they followed, United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005), reminding it that if it "should find that a particular defendant was a member of some other conspiracy, not the one charged in the indictment, then [it] must acquit that defendant." This instruction served as a bulwark against confusion by informing the jury that it would be impermissible for it to convict a defendant of participation in a conspiracy in which he took no part. Accordingly, we are convinced that, to the extent any variance existed, it did not substantially prejudice Brown, Russell, or Yarbrough.

**B.**

The defendants also contend that the evidence presented at trial was insufficient to prove their participation in the conspiracy set forth in the indictment. To establish the existence of a conspiracy, the government must show: (1) an agreement to achieve unlawful activity; (2) the defendants' knowing and voluntary participation in the conspiracy; and (3) the commission of an act in furtherance of

7

the agreement.  United States v. Brenson, 104 F.3d 1267, 1281–82 (11th Cir. 1997).  A defendant's knowing participation in a conspiracy may be shown "through proof of surrounding circumstances."  United States v. Matthews, 168 F.3d 1234, 1245 (11th Cir. 1999).

Russell and Yarbrough's challenge to the sufficiency of the evidence boils down to the argument that the government's witnesses were not credible because they were cooperating with the government in the hope of obtaining reduced sentences.  Whether the witnesses who testified against them were telling the truth is a determination for the jury, that, once made, we will not disturb.  Calderon, 127 F.3d at 1325; see also Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir. 2005) ("Legions of criminal defendants have been found guilty beyond a reasonable doubt on the testimony of witnesses who had everything to gain from implicating the defendants in crimes."); United States v. Lowery, 166 F.3d 1119, 1123–24 (11th Cir. 1999) (noting that the testimony of co-conspirators in return for sentencing considerations is a common place feature of criminal trials that "happens every work day in federal trial courts around this country"); United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (noting that acquittal is not required where "the government's case includes testimony by 'an array of scoundrels, liars and brigands'").

8

Contrary to Russell and Yarbrough's assertions, the government presented enough evidence for a jury reasonably to conclude that they committed the conspiracy charged in the indictment. A few examples highlight the sufficiency of the evidence. Watson testified that he traveled to Texas to purchase cocaine for Russell on multiple occasions with money supplied by Russell and his associates. Watson also testified that he delivered cocaine to Yarbrough and others, on Russell's behalf. Edwards testified that he pooled money with Russell to purchase cocaine in Houston for resale in Alabama. Finally, Russell's cousin, Bryant Russell, testified that he worked as a mule for Russell and Yarbrough, purchasing drugs for them and delivering the drugs to houses to be divided into smaller quantities for resale.

The evidence against Brown is somewhat attenuated, by comparison, but is still enough to survive a sufficiency of the evidence inquiry. Watson's testimony, while equivocal, that he delivered resale quantities of cocaine to Brown on five or six occasions, and that he "fronted" cocaine to Brown once or twice, is sufficient to establish Brown's participation in the conspiracy alleged in the indictment. Our decisions distinguish between one who merely purchases drugs and one whose participation, while small, constitutes part of a larger drug distribution conspiracy.

In United States v. Dekle, 165 F.3d 826 (11th Cir. 1999), we concluded that a doctor who distributed drugs to women in exchange for sexual favors did not conspire to distribute drugs based on that relationship alone, but we acknowledged a difference between that situation and one involving a purchaser who buys drugs in the chain of distribution in order to resell them. Id. at 829. We explained, "[i]t is because of this obvious mutual goal [of maximizing profit], which exists separate and apart from the individual transactions necessary to effect it, that a conspiratorial agreement may, in proper circumstances, be inferred from a series of drug transactions." Id.; see also United States v. Mercer, 165 F.3d 1331, 1335–36 (11th Cir. 1999) (concluding that a buyer-seller relationship by itself was insufficient to infer the existence of a conspiracy, but collecting cases recognizing that a pattern of repeated transactions and fronting drugs would be sufficient); United States v. Young, 39 F.3d 1561, 1566 (11th Cir. 1994) (concluding that the evidence was insufficient to support a conspiracy conviction where there was no evidence linking the drugs actually sold by the defendant to the larger conspiracy); United States v. Brown, 872 F.2d 385, 390–91 (11th Cir. 1989) (concluding that the evidence was insufficient to prove conspiracy as to a drug user when the seller only furnished that user with small quantities of drugs that he did not resell).

10

In <u>United States v. Beasley</u>, 2 F.3d 1551 (11th Cir. 1993), we affirmed the defendant's conviction for conspiring to distribute crack cocaine in the face of a sufficiency of the evidence claim. <u>Id.</u> at 1560–61. In that case, the defendant had purchased crack cocaine from a member of the conspiracy on several occasions and was "sometimes fronted" crack cocaine. <u>Id.</u> at 1560. The evidence also showed that the defendant had on one occasion worked with the conspirators to acquire crack cocaine for distribution. <u>Id.</u> From that evidence, we concluded that the defendant was not in a mere buyer/seller relationship, but instead was a member of the larger conspiracy. <u>Id.</u>

This case is more like <u>Beasley</u> than <u>Dekle</u>. Brown was not buying cocaine for his own personal consumption, nor was he purchasing it to give away or share with others. Instead, he was buying cocaine for resale at a profit. Because the jury could find that Brown was a repeat purchaser of resale quantities of cocaine and that he had accepted fronted cocaine for resale at least once, the jury could have reasonably inferred that Brown shared the "obvious mutual goal" of the other conspirators to maximize "the cash returns of the business through the distribution" of cocaine. <u>Dekle</u>, 165 F.3d at 829. Therefore, viewing the evidence in the light most favorable to the jury's verdict, as we must, we conclude that it was sufficient to support Brown's conviction on the conspiracy charge.

**III.**

Brown raises two more issues. First, he contends that he is entitled to a new trial because the court reporter did not transcribe audio recordings of conversations between his co-conspirators that were played for the jury. This contention is without merit. The Court Reporter Act, the authority on which Brown relies, requires the transcription of "all proceedings in criminal cases had in open court," 28 U.S.C. § 753(b)(1), but does not require that evidentiary exhibits be transcribed. See id.; see also United States v. Morales-Madera, 352 F.3d 1, 6 (1st Cir. 2003) (concluding that the Court Reporter Act did not require "conversations on . . . wiretap tapes . . . be recorded in a verbatim transcript"). Because the audio recordings were exhibits, the omission of their contents from the trial transcript does not warrant a new trial.

Brown also appeals the sentence imposed by the district court. He contends that the district court clearly erred in finding that he possessed a firearm in connection with the conspiracy because the firearm recovered from his vehicle was in his possession legally. The district court's finding that Brown possessed that firearm "in connection with" the charged conspiracy (because drugs were also found in his vehicle) rendered him ineligible for a safety-valve reduction under United States Sentencing Guidelines § 5C1.2(a) (Nov. 2005). This contention is of

12

no moment. U.S.S.G. § 5C1.2 does not require that a firearm used in connection with an offense be illegally obtained. See U.S.S.G. § 5C1.2(a)(2) (permitting a safety-valve reduction where "the defendant did not . . . possess a firearm . . . in connection with the offense"). Accordingly, we conclude that the district court did not commit clear error in finding that the firearm in Brown's possession, which was found in a vehicle that was also transporting cocaine, was used in connection with his offense for purposes of U.S.S.G. § 5C1.2.

## IV.

Russell and Yarbrough each raise several additional contentions. Two of those contentions are common to their appeals. First, they contend that their due process rights to a fair trial were violated because some of their co-conspirators who were witnesses for the government testified to higher drug quantities at trial than the amounts specified in their plea agreements. In response to their arguments on this issue at trial, the district court instructed the jury that it could consider any inconsistencies between drug quantity stipulations in the plea agreements and the co-conspirators' trial testimony in evaluating the credibility of those co-conspirators. That instruction gave Russell and Yarbrough an avenue to attack the credibility of the government's witnesses in their closing arguments. Neither Russell nor Brown cite any authority supporting their contention that revealed

13

inconsistencies between a witness' statements at trial and an earlier plea agreement constitute a due process violation. The district court resolved this issue appropriately; there was no due process violation.

Russell and Yarbrough also contend that the district court should have granted their motions for a mistrial on the ground that during his testimony one witness mentioned crack cocaine, a drug unrelated to the conspiracy charged in the indictment. Because the district court interrupted that witness' testimony, thus preventing any further mention of crack cocaine, and later instructed the jury to ignore the offending testimony, it did not abuse its discretion in denying Russell and Yarbrough's motion for a mistrial. See United States v. Perez, 30 F.3d 1407, 1411 (11th Cir. 1994) ("When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's decision not to grant a mistrial by decreasing the possibility of undue prejudice.").

## V.

Yarbrough raises two other contentions. First, he contends that the district court should have dismissed the conspiracy charge against him because the indictment was brought in violation of a plea agreement in an earlier case. While Yarbrough is correct that the government must "adhere strictly to the terms of plea agreements," In re Arnett, 804 F.2d 1200, 1204 (11th Cir. 1986), we disagree with

14

his assertion that the government reneged on an earlier plea agreement in seeking an indictment against him in this case. In the earlier plea agreement, the government accepted Yarbrough's guilty plea on a federal firearm charge and expressed its intention not to take over a state drug possession prosecution. The state drug possession charge stemmed from conduct underlying the conspiracy charged in this case. In the earlier plea agreement, the government had explicitly stated that it could not "prospectively immunize [Yarbrough] from any and all federal prosecutions which might materialize in the future." Given this statement, we do not think the government violated the plea agreement by seeking Yarbrough's indictment on the conspiracy count. The government stood by its promise not to bring federal drug possession charges parallel to the then pending state drug possession case. The conspiracy charged in this case is a separate crime from the possession offense that was the subject of the agreement. Cf. United States v. Bayer, 331 U.S. 532, 542, 67 S. Ct. 1394, 1399 (1947) ("[T]he same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself.").

Yarbrough also contends that he was entitled to an instruction on withdrawal from the conspiracy because he was incarcerated during the final years of the conspiracy. We review the district court's refusal to give a jury instruction only

15

for an abuse of discretion.  United States v. Dulcio, 441 F.3d 1269, 1275 (11th Cir. 2006).

This contention is wholly without merit.  The law of this circuit is clear that "neither arrest nor incarceration automatically triggers withdrawal from a conspiracy."  United States v. Gonzalez, 940 F.2d 1413, 1427 (11th Cir. 1991).  To establish withdrawal, a conspirator must show that he "undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities."  United States v. Finestone, 816 F.2d 583, 589 (11th Cir. 1987).  At oral argument, Yarbrough's counsel conceded that Yarbrough did not affirmatively communicate his withdrawal from the conspiracy to his co-conspirators or alert law enforcement.  The district court therefore did not abuse its discretion in refusing Yarbrough's request for an instruction on withdrawal from the conspiracy.

## VI.

Finally, Russell raises two additional contentions of his own.  First, he contends that the evidence presented at trial did not establish venue in the Northern District of Alabama.  "Proving venue is an essential part of the government's case

16

because criminal defendants have a right to be tried where the crime was committed." United States v. Long, 866 F.2d 402, 406 (11th Cir. 1989). Where the offense charged is a conspiracy, "venue is proper in any district where an overt act was committed in the course of the conspiracy." Id. at 407.

The government presented more than enough evidence at trial to prove venue was proper in the Northern District of Alabama. Two examples are illustrative. Watson testified that he delivered cocaine to Brown's house in Muscle Shoals, which is in the Northern District. Additionally, Bryant Russell, Russell's cousin, testified that he transported drugs between Muscle Shoals and Birmingham for Russell and Yarbrough. Moreover, at one defendant's request, the district court instructed the jury that the government was required to prove venue and gave the jury a list of the counties located within the Northern District. We therefore conclude the government presented enough evidence that, when read in light of the district court's instruction, established venue in the Northern District of Alabama.

Russell also contends that the district court erred in failing to remove a juror who participated in a brief conversation about media coverage of the trial over a weekend recess. Because Russell did not raise this claim in the district court, we review his claim only for plain error. Under plain error review, he must show that there is "(1) error (2) that is plain and (3) that affect[s] substantial rights." United

States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (alteration in original) (internal quotation marks omitted). If Russell shows these three things, we will exercise our discretion to hear his claim only if "the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (alteration in original).

Where a juror is exposed to outside evidence, we will order a new trial only "if the evidence poses a reasonable possibility of prejudice to the defendant. Prejudice is not presumed. The defendant has the burden of demonstrating prejudice by a preponderance of credible evidence." United States v. De La Vega, 913 F.2d 861, 870 (11th Cir. 1990). Russell has not carried that burden. The district court asked the juror to tell the court exactly what she heard about the case over the weekend recess, and the court concluded that the juror's brief exchange about the case was inconsequential. We agree. All the juror learned was that the case was on the local television news and that very few people were in attendance at the trial. That would not be enough to warrant action even if the matter had been raised below, which it was not. We therefore conclude that the district court did not commit plain error in failing to remove the juror in question.

**AFFIRMED.**

18