[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11214
Non-Argument Calendar
_____

D.C. Docket Nos. 3:09-cv-08007-SLB-HGD,
3:05-cr-00257-SLB-HGD-21

LARRY FRANK YARBROUGH,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 20, 2013)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

Larry Yarbrough, a federal prisoner proceeding pro se, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. Yarbrough is currently serving a 188-month prison term following his 2006 conviction on one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.[1] We granted a certificate of appealability on the issue of "[w]hether the district court erred in denying, without an evidentiary hearing, Yarbrough's claim that trial counsel rendered ineffective assistance." Yarbrough argues on appeal that an evidentiary hearing was needed to vet his ineffective-assistance claim that trial counsel failed to investigate and present evidence that he withdrew from the charged conspiracy—alleged in the indictment to have run from 1999 through 2005—in 2002.

## I.

In a § 2255 proceeding, we review the district court's findings of fact for clear error and its legal conclusions de novo. Devine v. United States, 520 F.3d 1286, 1287 (11th Cir. 2008). Denial of an evidentiary hearing, on the other hand, is reviewed for abuse of discretion. Aron v. United States, 291 F.3d 708, 714 n.5 (11th Cir. 2002). "[I]n order to be entitled to an evidentiary hearing, a petitioner need only allege—not prove—reasonably specific, non-conclusory facts that, if

---

[1] We previously affirmed Yarbrough's conviction in an unpublished opinion, United States v. Yarbrough, 260 F. App'x 230 (11th Cir. 2008).

2

true, would entitle him [or her] to relief." Id. at 715 n.6. Thus, "a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record." Id. at 715.

To prevail on an ineffective-assistance claim, the defendant must demonstrate both (1) that his or her counsel's performance was deficient, and (2) that he or she suffered prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To meet the deficient performance prong of the Strickland test, the defendant must demonstrate that the representation fell "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066. To prove prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong . . . or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

In order to be convicted for conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, it must be proven beyond a reasonable doubt that: (1) a conspiracy existed; (2) the defendant knew of the essential objectives of the conspiracy; and (3) the defendant knowingly and

voluntarily participated in the conspiracy.  United States v. Calderon, 127 F.3d 1314, 1326 (11th Cir. 1997).  As for individual responsibility at sentencing, the United States Sentencing Guidelines instruct that a defendant should be held accountable for his or her role in the conspiracy.  See U.S.S.G. § 1B1.3(a)(1)(A) and (B) (2005); see also id. at Ch.3, Pt.B, intro. comment. (explaining that a defendant's roll in an offense is determined under § 1B1.3(1)–(4 )).  For offenses involving multiple drug transactions, "the quantities of drugs are to be added" to determine a defendant's offense level.  Id. § 2D1.1, comment. (n.6).

## II.

Yarbrough maintains that he informed trial counsel that he withdrew from the conspiracy alleged when he was incarcerated in June 2002 for a separate offense, and that his withdrawal was even captured in recorded phone calls, yet counsel failed to investigate any of these conversations.  According to Yarbrough, had counsel diligently pursued this lead and presented the attendant evidence, he may have been able to successfully raise a defense of insufficient evidence or ambiguity in the indictment as to his participation in a conspiracy from 1999-2005 or to argue for a reduced drug quantity at sentencing.  Thus, Yarbrough argues that he was entitled to an evidentiary hearing because his assertions, if true, would demonstrate prejudice and would entitle him to relief.

"A conspiracy is an ongoing criminal activity for which a participant remains culpable until the conspiracy ends or the participant withdraws." United States v. Davis, 117 F.3d 459, 462 (11th Cir. 1997). Notably, however, "[n]either arrest nor incarceration automatically triggers withdrawal from a conspiracy." United States v. Richardson, 532 F.3d 1279, 1285 n.1 (11th Cir. 2008) (alteration in original). Instead, in order to establish withdrawal, the defendant must prove: "(1) that he has taken affirmative steps, inconsistent with the objectives of the conspiracy, to disavow or to defeat the objectives of the conspiracy; and (2) that he made a reasonable effort to communicate those acts to his co-conspirators or that he disclosed the scheme to law enforcement authorities." United States v. Starrett, 55 F.3d 1525, 1550 (11th Cir. 1995).

A defendant's withdrawal from a conspiracy "precludes liability for acts occurring after the withdrawal." United States v. Arias, 431 F.3d 1327, 1340 n.18 (11th Cir. 2005) (emphasis in original) (quotation marks omitted). Moreover, a defendant who successfully withdraws is not responsible at sentencing for actions taken by co-conspirators after his or her withdrawal. See United States v. Dabbs, 134 F.3d 1071, 1083 (11th Cir. 1998) (holding that a defendant was accountable at sentencing for losses within the scope of the conspiracy because he did not establish withdrawal).

Importantly, however, withdrawal after the defendant has committed an overt act in furtherance of the conspiracy is not an affirmative defense to criminal liability under § 846.  See Arias, 431 F.3d at 1340 n.18 ("[E]ven though withdrawal will not absolve the defendant from liability for the inchoate crime of conspiracy, which is completed upon commission of an overt act, the statute of limitations for that charge will begin to run at the time of withdrawal.").

We reject Yarbrough's argument that he was prejudiced by counsel's failure to investigate his alleged withdrawal because even if we accept Yarbrough's claims that his counsel's performance was deficient, that deficiency did not prejudice his case with respect to his conviction or sentencing.  Therefore, the district court did not abuse its discretion by declining to hold an evidentiary hearing.  See Schriro v. Landrigan, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); id. at 480–81, 127 S. Ct. at 1943–44 (holding that the district court did not abuse its discretion in denying a habeas petitioner an evidentiary hearing where he could not show prejudice).

Yarbrough's purported 2002 withdrawal would not have absolved him of liability for the underlying conspiracy.  Yarbrough does not contest his participation in the charged conspiracy from 1999 until his 2002 withdrawal.

Under <u>Arias</u>, once an overt act is committed—and there is no dispute that Yarbrough was committing overt acts between 1999 and 2002—withdrawal can no longer serve as a defense to criminal liability under § 846. <u>Arias</u>, 431 F.3d at 1340 n.18. In fact, a conspiracy participant remains liable, notwithstanding withdrawal, for all acts committed <u>prior to</u> withdrawal. See <u>Dabbs</u>, 134 F.3d at 1083.

Nor would Yarbrough's purported 2002 withdrawal have likely affected the jury's finding that he conspired to distribute and possess with intent to distribute cocaine weighing more than five kilograms. For instance, at trial, codefendant Bryant Russell testified to acting as a drug mule for Yarbrough and transporting a total of four kilograms on three occasions. Marcus Lampkin testified that he sold between a kilogram and a half kilogram of cocaine to Yarbrough and a co-conspirator "eight to ten" times and sold roughly the same amount to Yarbrough alone about fifteen times. James Watson, Cleo Barnett, Alonzo Thomson, and Alvin Madden also testified that they purchased from or sold drugs to Yarbrough. Thus, there was more than enough trial evidence of Yarbrough's direct participation in the conspiracy involving over five kilograms of cocaine before he says he withdrew in 2002. Beyond this specific evidence that we have recounted here, there was also evidence that Yarbrough was aware of or indirectly involved in a number of other transactions. See also <u>Yarbrough</u>, 260 F. App'x at 234–35

7

(upholding Yarbrough's conspiracy conviction). Therefore, Yarbrough fails to demonstrate prejudice about these other defenses counsel could have raised.

The same reasoning controls for Yarbrough's sentencing claims. At the sentencing hearing, the court aggregated the drug quantities from a number of transactions pursuant to U.S.S.G. § 2D1.1 and determined that Yarbrough was responsible for distributing five kilograms or more of cocaine. Importantly, the court only aggregated cocaine from incidents involving Yabrough's "own dealings" prior to his 2002 incarceration and the time he says he withdrew from the conspiracy. For this reason, there is not a reasonable probability that evidence of his withdrawal from the conspiracy would have changed the sentence. Thus, Yarbrough cannot meet the prejudice prong of his ineffective-assistance at sentencing claim.

Because the record contradicts Yarbrough's contention that he was prejudiced by his trial counsel's failure to investigate and present evidence of withdrawal from the charged conspiracy, we affirm.

**AFFIRMED.**