[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-3224

_____

D. C. Docket No. 96-231-CR-T-25E

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
1/25/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID MERCER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 25, 1999)

Before ANDERSON and BARKETT, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

David Mercer was convicted of conspiracy to distribute and possession with intent to distribute cocaine base. Mercer appeals only the conspiracy conviction, for which he received a mandatory life sentence. Because the government's evidence is insufficient to establish the existence of a conspiracy, we reverse.

This case began when a confidential informant told St. Petersburg, Florida detectives that he could provide information regarding an investigation of certain individuals suspected of drug activity, including Mercer co-defendant Carol Miller. On October 3, 1995, the informant asked

Miller where he could purchase one to two ounces of cocaine. Miller referred the informant to Mercer and gave him Mercer's address. In a recorded conversation, Miller told the informant that Mercer was her friend and could be trusted. Miller refused, however, to telephone Mercer or to accompany the informant to meet Mercer. The informant met with Mercer two days later, on October 5, 1995, and in recorded conversations discussed the purchase of two ounces of cocaine. The next day, Mercer sold the informant 27.98 grams of crack cocaine for $1,000. The informant attempted to arrange another purchase but was unable to contact Mercer.

Later, in January and February 1996, Mercer sold crack cocaine to an undercover police detective, as the result of an unrelated drug investigation. In late January, a different informant identified Mercer to police as a drug dealer. When the detective in charge ran Mercer's name through the police computer system, he discovered Mercer was already being investigated. The detective arranged through his informant to meet with Mercer, and bought 17.6 grams of crack cocaine for $900. In February, the detective purchased 29 grams of crack cocaine for $1,200.

The government returned a superceding indictment charging David Mercer and Carol Miller with conspiracy to distribute cocaine base, from about October 1, 1995 to about August 22, 1996 in violation of 21 U.S.C. § 846. The indictment also charged Mercer individually with two additional counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Mercer was convicted as charged. For sentencing purposes, the three transactions were grouped together in the conspiracy count. See U.S.S.G. § 3d1.2, note 8. Because the aggregate amount of drugs sold was more than 50 grams and Mercer had two or more prior felony drug convictions, he received a mandatory life sentence for the conspiracy offense. *See* 21 U.S.C. § 841(b)(1)(A)(iii); U.S.S.G. § 3D1.2. He received ten-year sentences for each of the three

2

substantive distribution counts, with the sentences for all counts to run concurrently. *See* § 841(b)(1)(B).

Co-defendant, Miller, who in addition to conspiracy was also charged with two counts of aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and with two counts of using a communication facility to facilitate the commission of drug offenses, in violation of 21 U.S.C. § 843(b) was acquitted of all counts, including the conspiracy charge.

We must determine whether, when examined *de novo* in the light most favorable to the government, there is substantial evidence to support the conspiracy verdict as to David Mercer. *See United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998).

Mercer was convicted of violating section 846 of Title 21 of the United States Code, which provides:

> [A]ny person who attempts or conspires to commit any offense in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846.

To support a conspiracy conviction under section 846, the government must prove (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means. *See Toler*, 144 F.3d at 1426. The existence of the conspiracy and the defendant's participation in it may be established through circumstantial evidence. *See Toler*, 144 F.3d at 1426.

The government contends the evidence proves Mercer conspired with his co-defendant, Carol Miller, and with unknown co-conspirators. The evidence of conspiracy arises out of Miller's conversation with the defendant and the three drug transactions. We can easily dispense with the

3

allegation of conspiracy between Mercer and Carol Miller. The government's evidence shows that Miller met with the confidential informant to discuss what drugs Mercer could supply. Miller stated: "He got to take you to who he deal with, he deal with um, what's his .. (Unintelligible) .. name. He deal with somebody he got to take you, I know he do pot, I don't know what all he do it for, you need to find out." She told the confidential informant where to locate Mercer, and encouraged him to trust Mercer.

Although this evidence may be considered in reviewing the sufficiency issue even though Miller was acquitted, *See United States v. Andrews*, 850 F.2d 1557 (11th Cir. 1988), *cert. denied,* 488 U.S. 1032 (1989), there is nothing here to support a finding of conspiracy between Mercer and Miller. Despite the confidential informant's repeated requests, Miller refused to telephone Mercer, or to go with the confidential informant to see Mercer. While the evidence shows that Miller referred Mercer to the informant as a source for the drug purchase, there is no evidence that she discussed with the informant or Mercer any details regarding the amount, quality or price of the cocaine or any particulars concerning the meeting. In short, there is no evidence of any agreement between Mercer and Miller.

The question then becomes whether there is sufficient evidence regarding the three drug sales to support a decision that Mercer was conspiring with unknown persons. The government relies heavily on the tape-recorded conversations in which Mercer and the police informant attempt to arrange a sale on October 5, 1995:

MERCER:   Oh boy ... wait till my partner get in, be about 5 o'clock today.

CI:   Uh hum.

MERCER:   And I am, he got to call his boy in Tampa...

4

CI:          Come all the way from Tampa?

MERCER:   Yea.

CI:          Damn man.

MERCER:   It won't take that long ... I got to check it out... get hold of some more guys around here that I know but they gonna run you where from about ah..$750.00 to $800.00 an ounce.

After Mercer's delivery to the informant was delayed, Mercer said he was considering buying from another source if he had to wait too much longer.

MERCER:   I don't know I ... like I said man, I am just on hold.

CI:          ... that's bad business.

                ........

MERCER:   I know....But right now I am just waiting on him to call us and then if he don't call as soon as, uh, my old lady get home, I am going some where else.

(The actual sale did not occur until the next day, October 6, 1995).

According to the government, these conversations constitute evidence from which a jury could reasonably infer that "Mercer had an unknown source who supplied and/or cooked crack cocaine and that Mercer was involved in more than a buyer/seller relationship with his source." The government's case against Mercer appears to be based on the following syllogism: Since cocaine comes from out of the country, Mercer must know he is buying from conspirators involved in the importation and distribution of drugs, and therefore he is a member of the conspiracy. The government stated as much in its closing argument:

Now [defendant's references to sources for the cocaine] shouldn't surprise you because

5

probably most of you know from reading the paper that cocaine comes from where...South America. David Mercer got this cocaine from someone to sell it. This wasn't cocaine he got for his own personal use. This was a relatively large amount of crack cocaine. So just about everybody out there selling crack cocaine is conspiring with someone else, the person he's getting it from.

Under the government's theory, anyone selling crack cocaine can be charged with conspiracy in addition to the substantive charge. This cannot be the result intended by the Sentencing Commission when it recognized that conspiracy offenses may be 'composite,' involving multiple underlying offenses and allowed for the grouping of offenses to arrive at a single "combined" offense level. *See generally* U.S.S.G. § 3D.

Justice Jackson, 50 years ago, in discussing the development of the law of conspiracy referred to Justice Cardozo's maxim about "the tendency of a principle to expand itself to the limit of its logic." *See Krulewitch v. United States,* 336 U.S. 440, 445, 69 S.Ct. 716, 719, 93 L.Ed. 790 (1949) (Jackson, J., concurring)." This case tests the limit of the logic underlying conspiracy law. The government's position "stretches the boundaries of conspiracy law to the breaking point." *U.S. v. Townsend,* 924 F.2d 1385, 1391 (7th Cir. 1991).

To properly decide this case, we must make the critical distinction between a conspiratorial agreement and a buyer-seller transaction. "We punish conspiracy because joint action is, generally, more dangerous than individual action." *United States v. Townsend*, 924 F.2d 1385,1394 (7th Cir. 1991). While a sale, by definition, requires two parties, the agreement is to exchange drugs for money. "The buy-sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction."

6

*Townsend*, 924 F.2d at 1394. On the other hand, "[c]onspiracies, which are really 'agreements to agree' on the multitude of decisions and acts necessary to successfully pull off a crime, pose an additional risk that the object of the conspiracy will be achieved, and so warrant additional penalties." *Townsend*, 924 F.2d at1394. The essence of the conspiracy, then, is an agreement, not the commission of the substantive offense. *Toler*, 144 F.3d at 1426. "Where the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown." *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993), *cert. denied,* 512 U.S. 1240 (1994),(citing *United States v. Burroughs*, 830 F.2d 1574,1581(11th Cir. 1987), *cert. denied*, 485 U.S. 969(1988)).

In the case of a purchaser of narcotics, we have held that agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser. *See United States v. Beasley*, 2 F.3d 1551 (11th Cir. 1993); *United States v. Bascaro,* 742 F.2d 1335,1359 (11th Cir. 1984)*, cert. denied sub nom., Hobson v. United States,* 472 U.S. 1017 (1985). In *Beasley*, the evidence against defendant established more than a buyer-seller relationship between defendant and the seller. The seller testified that defendant purchased crack cocaine from him on several occasions during seller's short stay in Mobile and that he sometimes fronted the cocaine to defendant. The seller knew from what street corner defendant was selling the cocaine. The seller testified that he and defendant "split up" three kilograms of cocaine. From this evidence, the jury could have reasonably inferred a continuing course of conduct between the parties designed to result in the distribution of cocaine from that particular street corner.

In *Bascaro,* the defendants were among the selling group's best buyers, they purchased from

7

the selling group on numerous occasions, and maintained a close relationship with the selling group. The selling group relied upon the defendant's participation and cooperation for its success. The court determined the evidence was more than sufficient to sustain the conclusion that the defendants had entered into a conspiratorial agreement with the other co-defendants. 742 F.2d at 1359.

We have held the evidence sufficient to support a conspiracy involving unknown persons where there were numerous references to other conspirators and details regarding the conspiratorial agreement. *See United States v. Martinez,* 96 F.3d 473, 477(11th Cir. 1996), *cert. denied, __* U.S. __, 117 S. Ct. 998 (1997); *United States v. Carcaise*, 763 F.2d 1328(11th Cir. 1985). In *United States v. Martinez,* the government presented the following evidence:

> Gallo contacted a government agent and stated that he was interested in a "drug rip." At a later meeting, Gallo said "said that he had the guns and the people ready [to steal the 50 kilograms of cocaine]. He was a professional. He had done this before." Finally, Gallo was to receive 25 kilograms of cocaine as his share of the "drug rip."

96 F.3d at 477.

We held that the defendant's statement that "he had the guns and the people ready" was legally sufficient to conclude that the defendant had entered into a conspiracy with someone to steal cocaine.

In *Carcaise,* we upheld defendant's conviction for conspiracy to possess drugs with intent to distribute based on numerous statements referring to "the guy," "my friend" and "these people" and references to the details of the drug delivery. 763 F.2d at 1331 n.6.

At the other end of the spectrum, where the evidence proved only a buy-sell transaction, this Court has reversed a conviction for drug conspiracy. *See United States v. Wright*, 63 F.3d 1067 (11th Cir. 1995). Concluding that the evidence was insufficient to establish conspiracy, the Court noted that the "record reveals little conversation between [the seller] and the Appellant, and no

evidence that an actual agreement was consummated." 63 F.3d at 1072.

Applying this law to the facts in this case, we can infer from Mercer's remarks that he had a buy-sell relationship with an unnamed source. The evidence is legally insufficient, however, to show a conspiratorial agreement to distribute drugs. Nor does Mercer's single reference to "my partner" establish the existence of a partnership for purposes of this case. When looked at in context, the term partner probably was used in the colloquial sense as someone with whom he had dealings with. This vague reference without more is insufficient to establish a conspiratorial agreement. *See, e.g.*, *United States v. Morris*, 836 F.2d 1371,1374 (DC Cir. 1987)(court rejected a reference to "my people" being available "after 3:00." as sufficient to establish a regular source). In fact, Mercer's comment that he would go somewhere else if he did not hear from his supplier belies the inference that he had a conspiratorial agreement with a particular supplier.

The government also argues that cocaine sales made by Mercer on two other occasions, in late January 1996 and in late February 1996 are evidence of a continuing conspiracy because Mercer's "method of distributing crack cocaine appeared to be the same in early 1996 as it was in October 1995." In late January 1996, a different informant introduced Mercer to a new customer, a police detective, and Mercer sold cocaine to the detective on two occasions. These sales came about as the result of an unrelated drug investigation. There is little in the record about these sales other than that they occurred. As we have stated, the mere fact that the sales took place cannot alone support an inference of conspiracy. *See United States v. Wright*, 63 F.3d 1067(11th Cir. 1995).

In this case there is no evidence of anything other than at most a buyer-seller relationship. There was no evidence of a common design or purpose to join Mercer with anyone other than government agents. The evidence shows simply that his co-defendant Miller knew that Mercer sold

9

drugs and that he had sources from which he could get drugs, that Mercer had a source for drugs and if that source failed he would "go somewhere else," that he bought quantities of cocaine from some unknown source and sold it to police agents presumably at a profit. Having carefully reviewed the record, we conclude that evidence is insufficient to sustain Mercer's conspiracy conviction.

**REVERSED.**