[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-14473

_____

D. C. Docket No. 05-60160-CR-KAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TREVOR NELSON,
DONEVOR JACKSON,
MARCUS RIVERS,
THOMAS JONES,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 25, 2009)

Before BARKETT and FAY, Circuit Judges, and TRAGER,[*] District Judge.

_____

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

PER CURIAM:

Co-defendants Trevor Nelson, Marcus Rivers, Thomas Jones, and Donevor Jackson appeal from their convictions and sentences for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. Jackson also appeals from his additional conviction and sentence for conspiracy to import cocaine and a detectable amount of marijuana, in violation of 21 U.S.C. § 963.

The charges stemmed from a drug smuggling operation that moved cocaine and marijuana from Jamaica to Florida, run by Exall McNeil, the government's principal cooperating witness. Narcotic shipments would be loaded onto Air Jamaica flights in Kingston, Jamaica bound for Fort Lauderdale Airport (FLL). Appellant Donevor Jackson and Donald Swaby, another government cooperating witness, worked at FLL for a company called Aircraft Services International Ground as ramp agents unloading aircrafts. They would keep McNeil informed about when it was best to arrange shipments and would remove the narcotics from the Air Jamaica airplanes when the shipments arrived. McNeil then distributed the cocaine through two separate distributors, "fronting" the cocaine to Appellants Rivers and Nelson, who each would re-sell it in Jacksonville, FL. Appellant Thomas Jones worked as a courier for Rivers, picking up cocaine from McNeil, transporting it to Rivers and returning to McNeil with the money from the sales.

2

McNeil was arrested and offered to testify against other members of this operation. The government brought an indictment alleging that inter alia all co-defendants took part in a conspiracy starting in June 2004 to import and distribute cocaine and marijuana. The jury was given a special verdict form on which to decide which drugs, and in what amount, were attributable to each defendant. Only Jackson was found guilty of both importation and distribution and to have dealt with both cocaine and marijuana, while Rivers, Thomas, and Nelson were found guilty of distributing only cocaine. This appeal followed raising several issues, which we briefly address.

## I. Admission of "Inextricably Intertwined" Evidence

Jackson, Rivers, and Nelson all argue that the district court erred in admitting McNeil's testimony as to drug-related transactions that occurred before the time-frame stated in the indictment. They assert it should have been inadmissible under both Fed. R. Evid. 403—because it was more prejudicial than probative—and 404(b)—because it was evidence of other bad acts, which are not admissible to prove a defendant's character in order to show conformity therewith, and none of the 404(b) exceptions apply. We conclude that the district court did not err in ruling that the evidence was admissible, as the testimony had probative value that was not substantially outweighed by prejudice in proving the beginning

3

and continuing stages of the conspiracy; furthermore, rule 404(b) was not applicable.

> [E]vidence of criminal activity other than the charged offense is not "extrinsic" under Rule 404(b), and thus falls outside the scope of the Rule, when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense."

United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (citation omitted).

The revelation of the prior transactions served multiple purposes, none of which was overly prejudicial nor purporting to establish character. First, the past acts were intertwined with the series of transactions that make up the conspiracy charge. Second, given that one of the defenses was that the packages—which were opaque—contained something other than narcotics, this part of the testimony confirmed why McNeil (and the jury) had reason to believe the package did indeed contain drugs. Third, as to Jackson, the evidence was relevant to his knowledge or intent in participating in these transactions. Jackson's defense, which also argues that the government cannot prove he had knowledge of the goal of the conspiracy, is undercut by testimony that suggests he previously knowingly participated in very similar activities. Thus, the judge did not err in ruling this evidence was

4

admissible.[1]

## II. Permitting the Jury to Find Conspiracy to Distribute Cocaine or Marijuana Despite the Indictment Charging in the Conjunctive

Jones and Nelson argue that the government must prove a multi-substance conspiracy since it charged them with conspiracy to distribute both cocaine and marijuana and that it is a constructive amendment of the indictment to only require proof of one. Our case law suggests otherwise. It is a constructive amendment of the indictment—and reversible error per se—"where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the indictment." United States v. Simpson, 228 F.3d 1294, 1299 (11th Cir. 2000). However, we have previously rejected the argument that "by changing 'and' to 'or' in its charge to the jury, the district court modified the elements of the offense charged, lessened the State's burden of proof, and denied him [the defendant] due process rights." Id. And as we have affirmed recently, "[t]his Court has long held that where there is a conviction for a

---

[1] Jackson also argues that, with regard to Swaby's testimony of a previous bad act, the district court should have declared a mistrial rather than simply provide a limiting instruction to ignore the relevant testimony. The decision to grant a mistrial is within the discretion of the trial judge. See United States v. Mendez, 117 F.3d 480 (11th Cir. 1997). "When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's decision not to grant a mistrial by decreasing the possibility of undue prejudice." United States v. Perez, 30 F.3d 1407, 1411 (11th Cir. 1994). Given the other pieces of existing incriminating evidence in the record against Jackson, and the drastic nature of a mistrial, we do not find the judge abused his discretion when he gave a limiting instruction to mitigate any prejudice rather than declare a mistrial.

multi-object conspiracy, the evidence must only be sufficient to sustain a conviction for any one of the charged objectives." United States v. Medina, 485 F.3d 1291, 1301 (11th Cir. 2007). The special verdict form did not alter the elements of the conspiracy, it just provided for a finding in the disjunctive rather than the conjunctive. Accordingly, it was not a constructive amendment of the indictment to uphold a conviction upon a finding of a conspiracy to distribute cocaine or marijuana—in this case, just cocaine. See Griffin v. United States, 502 U.S. 46, 56 (1992) ("When a jury returns a verdict on an indictment charging several acts in the conjunctive, . . . [t]he verdict stands if the evidence is sufficient with respect to any of the acts charged.").

### III. Sufficiency of the Evidence

Jackson, Jones, and Nelson all allege that the evidence was insufficient to support the conspiracy convictions. The elements of the offense of conspiracy under 21 U.S.C. § 846 are "(1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998). In analyzing a sufficiency of the evidence claim regarding a conspiracy, the court must view the facts in the light most favorable to the jury verdict, United States v. Burroughs, 830 F.2d 1574, 1581 (11th Cir. 1987), and must find that "substantial

6

evidence" exists to support it, Toler, 144 F.3d at 1426. Having considered the totality of the record, we find there is clearly sufficient evidence as to Jackson and Jones.

Jackson suggests that because McNeil's testimony that Jackson was involved in an importation in June of 2005 was not corroborated by recorded conversation, it was insufficient. We disagree. The jury and the judge were free to make a credibility finding that McNeil was telling the truth when he said that Jackson worked for him. McNeil's testimony was corroborated by Swaby's testimony, who also recounted delivering two packages of cocaine to Jackson to give to McNeil, and Jackson's post-arrest statement, which acknowledged discussing the possibility of taking drugs off the planes.

Jones argues the evidence cannot support his conviction due to lack of specifics of time and quantity, because McNeil could not provide any evidence as to when Jones arrived in Fort Lauderdale to pick up cocaine and how much was retrieved. However, an exact time is not required for proving a conspiracy. See United States v. Steele, 178 F.3d 1230, 1234 (11th Cir. 1999) ("When charging a defendant of participating in a conspiracy, the government may discharge its obligations by referring to a certain duration of time.). McNeil's testimony discussed a duration of time and was specific enough to support a finding beyond a

7

reasonable doubt that Jones's activities involved at least five kilograms, even if it was not pinpointed to an exact amount above that threshold.

As to Nelson, it is a closer question given the short span of recorded conversations suggesting a very limited role in the distribution chain. Nelson argues that the evidence proves only a buyer-seller relationship and that there is no evidence that he participated in a conspiracy to distribute the drugs.[2] Simple purchases are not sufficient for a conspiracy. Burroughs, 830 F.2d at 1581. However, an agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser with evidence of subsequent distribution. Thus, we must determine whether the

_____

[2] Alternatively, he suggested at oral argument that the government erred by charging one single overarching conspiracy. "[T]he government must prove the conspiracy it charged in the indictment rather than some other conspiracy. The government must show an 'interdependence' among the alleged co-conspirators in order to prove that the indicted conspiracy was a single unified conspiracy as opposed to a series of smaller, uncoordinated conspiracies." Toler, 144 F.3d at 1426. Nelson suggests there was no interdependence with anyone but McNeil. We first consider "(1) whether a common goal existed, (2) the nature of the scheme underlying the crimes charged, and (3) the overlap of participants." United States v. Coy, 19 F.3d 629, 633 (11th Cir. 1994). If we find a variance, we then ask whether it

> prejudiced the defendants' substantial rights. Such prejudice occurs when "(1) the proof at trial differs so greatly from the charges in the indictment that the defendant is unfairly surprised and has an inadequate opportunity to prepare a defense, or (2) if there are so many defendants and so many separate conspiracies before the jury that there is a substantial likelihood that the jury transferred evidence from one conspiracy to a defendant involved in another conspiracy."

Id. at 634.

Given how little evidence there is that Nelson knew of the existence of Rivers or Thomas, it may have been more appropriate to have charged a separate conspiracy between McNeil and Nelson. However, despite this possible variance, Nelson did not move for a severance on this basis.

evidence constitutes "mere isolated sales" or a "continuing course of conduct by the defendants designed to result in distribution." Burroughs, 830 F.2d at 1581. The court has used the following factors as illustrative of a conspiracy: (1) multiple purchases; (2) regular travel to obtain drugs; (3) communications initiated before making the trips; (4) the buyer knowing from where the seller's drugs came; (5) the seller knowing where the buyer will resell it; (6) the seller's interest in the drugs beyond the sale to the buyer; and (7) the "fronting" of drugs to buyers. See United States v. Beasley, 2 F.3d 1551 (11th Cir. 1993); Burroughs, 830 F.2d 1574.

Nelson made multiple purchases, would travel to Ft. Lauderdale to pick up the drugs, would communicate with McNeil about whether the drugs had arrived, and McNeil fronted Nelson the drugs and, therefore, had an interest in Nelson's reselling. Nelson argues that the record reveals only a limited amount of phone conversations that took place and that Nelson informed McNeil he would have to get drugs elsewhere if McNeil did not have any available. Cf. United States v. Mercer, 165 F.3d 1331, 1336 (11th Cir. 1999) ("[Defendant's] comment that he would go somewhere else if he did not hear from his supplier belies the inference that he had a conspiratorial agreement with a particular supplier."). However, given that we must view the facts as most favorable to the jury verdict, we must conclude that McNeil's testimony is sufficient evidence from which a jury could

infer that Nelson was a conspirator.[3]

## IV. Sentencing Issues

### A) Donevor Jackson

Jackson argues that the district court erred in not applying the "safety valve" provision after finding Jackson had not provided the government with all the information he had.[4]  In applying the safety-valve provision, this court reviews the district court's factual findings for clear error and its legal conclusions de novo.

---

[3] Rivers also argues that the penalties provided for in 21 U.S.C. § 841 violate the equal protection clause and are cruel and unusual punishment.  These arguments are foreclosed by our prior precedent.  See United States v. Holmes, 838 F.2d 1175, 1177–78 (11th Cir. 1998) (holding that § 841(b)(1)'s mandatory minimum provisions were rationally related to the objectives of protecting public welfare); United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992) (holding that the mandatory life sentence provisions of § 841(b)(1) do not violate the Eighth Amendment).

Jones also argues that the district court abused its discretion in permitting McNeil and an FBI Agent to testify as to the meanings of certain recorded conversations.  Given that McNeil was personally involved in the conversations and the FBI Agent was qualified to serve as an expert in this capacity, we find no reversible error on this issue.

Jackson also argues that the district court abused its discretion in permitting a Jamaican forensic lab analyst to testify.  The fact that the expert was trained in Jamaica, as opposed to the United States, does not deprive her of any of the requirements to qualify as an expert under Fed. R. Evid. 702 (stating that a witness must have "knowledge, skill, experience, training or education" relevant to the evidence at issue).

[4] The Sentencing Guidelines provide for sentencing without regard to any statutory minimums with respect to certain offenses when specific requirements are met.  U.S. Sentencing Guidelines Manual § 5C1.2 (2008); 18 U.S.C. § 3553(f) (2008).  The Guidelines also permit a two-level reduction in the offense level for certain drug-related crimes if the defendant meets the five criteria set forth in § 5C1.2 and § 3553(f).  U.S. Sentencing Guidelines Manual § 2D1.1(b)(11).  The five criteria are as follows: the defendant (1) must have no more than one criminal history point; (2) must not have been a leader in the offense; (3) must have been non-violent during commission of the offense, (4) must not have engaged in an offense that resulted in death or serious bodily injury; and (5) truthfully provided the government with all the information and evidence he had "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  U.S. Sentencing Guidelines Manual § 5C1.2(a)(1-5); § 3553(f)(5).

United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006). Jackson bears the burden of establishing that he qualifies for the reduction. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). The defendant has "an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004).

Jackson argues that the government has not explained how his statements were incomplete and that the court erred by deferring to the government's assertion without making its own determination. Jackson fails to meet his burden. In his statement, Jackson admitted that he participated in the offenses, but denied that he was paid and indicated that he never followed through with McNeil's plans about off-loading drugs. The testimony at trial established that Jackson off-loaded several shipments of drugs and was paid $3,500 per kilogram. In considering the reduction, the court stated that it found it implausible that Jackson would have participated in the offenses without compensation. Based on the record, then, the district court did not rely solely on the government's argument. The court evaluated Jackson's credibility and his statement to the government and independently determined that Jackson did not qualify for the reduction.

*B) Marcus Rivers*

Rivers argues that the district court erred in enhancing his sentence for playing a supervisory role in the offense. This court reviews "for clear error the district court's determination of [the defendant's] role in the scheme and de novo its application of the guidelines to that role." United States v. Njau, 386 F.3d 1039, 1041 (11th Cir. 2004). "The findings of fact of the sentencing court may be based on evidence heard during trial, . . . undisputed statements in the presentence report, or evidence presented at the sentencing hearing." United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989). "[T]he ultimate determination of role in the offense is . . . a fundamentally factual determination entitled to due deference . . . ." United States v. Rodriguez De Varon, 175 F.3d 930, 938 (11th Cir. 1999) (en banc).

Section 3B1.1(b) of the U.S. Sentencing Guidelines provides, "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."[5] Here, the district court properly concluded that Rivers was a manager or supervisor. First, the overall scheme involved more than five

---

[5] The commentary elaborates, "[t]o qualify for an adjustment under this section, the defendant must have been the . . . manager, or supervisor of one or more other participants." U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.2 (2008). A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.1.

participants, as the testimony at trial established that Rivers was linked to McNeil, Jones, Jackson and Swaby. Second, the testimony and evidence at trial was sufficient for the court to conclude that Rivers directed Jones to pick up drugs and deliver them to Rivers. McNeil stated that he met Jones through Rivers, that there were several phone calls between McNeil and Rivers in which the two discussed Jones, and that Jones contacted McNeil to obtain cocaine independently to sell for himself instead of Rivers. Furthermore, the government introduced recorded calls in which Rivers referred to his "boys" or "workers" and specifically told McNeil that Jones had "messed up." In light of this evidence, the district court's conclusion that Rivers was a supervisor is entitled to deference.[6]

### C) Trevor Nelson

Nelson argues that he was entitled to a minor role reduction because the evidence established that he had no knowledge of the larger conspiracy, and that he was responsible for only five percent of the cocaine. This court reviews a district

---

[6] Rivers also contends that his sentence is unreasonable. Here, the sentenced imposed was both procedurally and substantively reasonable. First, the district court correctly calculated the Guidelines range, treated the guidelines as advisory, considered the § 3553(a) factors, and adequately explained its reasoning for imposing the specific sentence. Notably, the court considered and agreed that a variance was warranted in order to address the disparity in sentencing between McNeil and Rivers. The sentence was also substantively reasonable. Rivers was sentenced to 180 months' imprisonment, which was well below the low end of the calculated guidelines range of 210 months. Rivers has offered nothing to show the sentence imposed was not reasonable nor has he shown that he was punished for exercising his right to trial other than to claim that the disparity in sentence establishes that he was punished. The court took this concern into consideration and applied a variant sentence to account for any disparity.

13

court's determination of a defendant's role in the offense for clear error. Rodriguez De Varon, 175 F.3d at 937. Nelson bears the burden of showing that he is entitled to a role reduction by a preponderance of the evidence. Id. at 939.

A district court may decrease a defendant's offense level by two levels if it finds that the defendant was a "minor participant." U.S. Sentencing Guidelines § 3B1.2(b) (2008). A "minor participant" is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S. Sentencing Guidelines § 3B1.2 cmt. n.5 (2008). In determining whether a minor-role adjustment applies, the district court should consider two principles: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." Rodriguez De Varon, 175 F.3d at 940. As to the first prong, "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." Id. at 944. The first prong may, in many cases, be dispositive. Id. at 945.

Here, Nelson has offered nothing to show that he was entitled to a reduction. Importantly, Nelson was held accountable only for the amount of drugs in which

14

he participated and not the amount attributed to the larger conspiracy. Moreover,

Nelson has not shown that he was less culpable than others involved, only that he

distributed less cocaine.[7]

Accordingly, the convictions and sentences of all defendants are

**AFFIRMED**

---

[7] Nelson also claims that his sentence was unreasonable. This claim fails. First, the sentence was procedurally reasonable for, as discussed above, the district court adhered to the procedural requirements. The sentence was substantively reasonable, as Nelson's sentence was at the low end of the guidelines range and well below the statutory maximum sentence.