[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 14, 2011
JOHN LEY
CLERK

No. 09-11158
Non-Argument Calendar

_____

D. C. Docket No. 04-20446-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERNAN PRADA,
a.k.a. Papito,
a.k.a. El Gordo,
a.k.a. Humberto,
a.k.a. Ramazote,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 14, 2011)

Before CARNES, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Hernan Prada appeals his convictions for conspiracy to import into the United States five kilograms or more of cocaine, in violation of 21 U.S.C. § 963, and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Prada was indicted on July 2, 2004, and the superseding indictment charged that he engaged in the two conspiracies from 1989 through December 7, 1999. He contends that the government presented insufficient evidence at trial to show that the conspiracies continued after July 2, 1999, the date the statute of limitations period expired. Prada challenges the credibility of four government witnesses who testified about his involvement in cocaine trafficking after July 2, 1999. He also contends that his trial counsel provided ineffective assistance.

## I.

"We review the sufficiency of the evidence de novo, taking the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict." United States v. Langford, 647 F.3d 1309, 1319 (11th Cir. 2011). "[W]e will not disturb the verdict unless no reasonable trier of fact could find guilt beyond a reasonable doubt." Id. "It is well established that credibility determinations are the exclusive province of the jury," United States v.

Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (alteration and quotation marks omitted), and we accept those determinations unless a witness' testimony is "incredible as a matter of law." Id. Testimony about "facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature" is the kind that is incredible as a matter of law. Id. (alteration and quotation marks omitted). The "uncorroborated testimony of an accomplice may be enough to support a conviction if the testimony is not on its face incredible or otherwise insubstantial." United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005).

There is a five year statute of limitations for the conspiracies Prada was charged with under 21 U.S.C. §§ 846 and 963. See 18 U.S.C. § 3282(a) (providing that an offender must be prosecuted "within five years next after such offense shall have been committed"). The requirements of the statute of limitations are satisfied if the government proves that the conspiracies continued into the limitation period. See United States v. Arnold, 117 F.3d 1308, 1313 (11th Cir. 1997). "[A] conspiracy is deemed to continue as long as its purposes have neither been abandoned nor accomplished, and no affirmative showing has been made that it has terminated." Id.

In the present case, to meet the requirements of the statute of limitations, the

3

government had to prove that the two charged conspiracies continued on or after July 2, 1999. The jury was instructed on the statute of limitations, and it returned a guilty verdict on both counts against Prada.[1] The court entered judgment on the verdict and sentenced Prada to 342 months imprisonment and 5 years supervised release.

Four government witnesses testified about Prada's activities in the cocaine trafficking conspiracies after July 2, 1999: Mario Astaiza, Alex de Cubas, Alfredo Devengoechea, and Bernardo Careaga. There was no evidence that Prada had withdrawn from the cocaine conspiracies, see United States v. Westry, 524 F.3d 1198, 1216 (11th Cir. 2008) ("[W]ithdrawal is an affirmative defense that the defendant has the burden to prove."), or that the conspiracies had ended, see Arnold, 117 F.3d at 1313.

Astaiza testified about his role in coordinating the shipment of the second half of a 2500 kilogram, two-part shipment of cocaine that Prada was supplying to a Mexican drug trafficker called El Licenciado. According to Astaiza, that occurred in December 1999. The 2500 kilograms of cocaine Prada was sending for El Licenciado were being shipped along with about 7000 kilograms of cocaine for him that had been obtained from people other than Prada. Astaiza testified that on

---

[1]At his first trial the jury was unable to reach a verdict, and the court declared a mistrial.

December 6, 1999 El Licenciado told him that the Mexican Navy had intercepted the boat that was carrying a total of about 8000 kilograms of cocaine.  Astaiza remembered the exact date because it was a Colombian holiday called "the day of the little candles."

Prada argues that Astaiza's testimony was unbelievable on its face because that holiday is actually on December 8, not December 6.[2]  Any discrepancy in those dates, however, does not change the fact that the jury could have chosen to credit Astaiza's testimony that he continued to be involved in drug trafficking conspiracies with Prada in December 1999, particularly given that Prada did not ask the district court to take judicial notice of the date of the religious holiday and did not argue to the jury the discrepancy that he points out to this Court.  Even if Prada was confused about the exact date, that does not make his testimony incredible as a matter of law.  See Calderon, 127 F.3d at 1325.

De Cubas testified that he managed drug smuggling trips.  He testified that he met with Prada in early July 1999 regarding the transportation of 1500

---

[2]Prada filed a motion in this Court asking us to take judicial notice of the fact that December 8 is a Catholic Holy Day that is widely celebrated in Colombia.  For the sake of argument, we grant Prada's motion and notice that fact.  See Fed. R. Evid. 201(b)(2) (stating that judicial notice may be taken when the fact in question is "one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); cf. Levan v. Capital Cities/ABC, Inc., 190 F.3d 1230, 1235 (11th Cir. 1999) (taking judicial notice of the Prime Rate on February 14, 1989 because it could not reasonably be disputed).

kilograms of cocaine, and again in November 1999 he checked on the status of the deal. According to de Cubas' testimony, he was on stand-by to transport a load of cocaine for Prada, and that agreement lasted until November 1999.

Devengoechea testified that he prepared boats for Prada between 1999 and 2001. He identified Prada's associates in the drug trafficking trade and Prada's house and its location. Careaga also testified about Prada's role as a supplier of cocaine to others who sold it. According to Careaga, five kilograms of cocaine that Prada had supplied in November 1999 were seized by police, and the drugs were marked with the numbers "1061." Those numbers add up to 8—the "lucky" number Prada always used in some form on his cocaine shipments based on his belief in numerology. Although the testimony given by these four witnesses contained numerous inconsistencies, which Prada catalogs in detail, a reasonable jury could have chosen to credit the parts of their testimony showing that Prada remained involved in the charged conspiracies after July 2, 1999.

The government presented sufficient evidence that Prada had a long-term drug trafficking relationship with El Licenciado, who shipped cocaine into the United States. See United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999) (explaining that a conspiracy can be shown based on a continuing relationship between a buyer and seller of drugs or a continuing course of conduct); United

States v. Beasley, 2 F.3d 1551, 1560–61 (11th Cir. 1993) ("[T]he jury could have reasonably inferred a continuing course of conduct between Christopher and Stanberry designed to result in the distribution of cocaine . . . .").

When the district court denied Prada's motion for a judgment of acquittal, it recognized the inconsistencies in some of the witnesses' testimony and commented that if it were the factfinder, it would acquit. The court acknowledged, however, that it was not the factfinder and that there was enough evidence for a reasonable jury to convict. We agree. The credibility determinations based on the testimony presented were for the jury, and we cannot say that no reasonable trier of fact could find guilt beyond a reasonable doubt based on the evidence that the conspiracies continued beyond July 2, 1999.

## II.

Prada also contends that his trial counsel provided ineffective assistance. We generally do not "consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). The Supreme Court has instructed that "ineffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation

during an entire trial." <u>Massaro v. United States</u>, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694 (2003). That is because, even though the record may reflect specific actions taken by counsel, it does not reflect the reasons underlying those actions. <u>Id.</u> The preferred way to bring a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion. <u>Id.</u> at 504, 123 S.Ct. at 1694.

Because the district court did not consider the issue and develop a factual record with respect to the performance of trial counsel, we decline to consider Prada's ineffective assistance claim for the first time on direct appeal.

**AFFIRMED.**