[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16493
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00555-SCB-AEP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL POSA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 21, 2014)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Samuel Posa appeals his conviction for conspiring to dispense and distribute

oxycodone and possessing oxycodone.  We affirm.

# I. BACKGROUND

Dr. Blake Barton, a psychiatrist, practiced medicine in St. Petersburg, Florida. Dr. Barton provided numerous oxycodone prescriptions to Posa. In return, Posa gave Dr. Barton and his girlfriend, Lea Ann Locklear, a portion of the pills from the prescriptions he had filled. Dr. Barton initially gave Posa prescriptions for 180 pills and later increased the amount to 240 pills. Although Dr. Barton gave Posa money to fill the initial prescriptions, under their arrangement, Posa paid for subsequent prescriptions using the profits from selling the previously prescribed oxycodone. Dr. Barton told Posa not to visit the same pharmacy more than once per month and to go to smaller, non-franchise pharmacies. Posa paid for all prescriptions with cash to avoid records of his purchases. Additionally, Locklear saw Posa give oxycodone to his brother, and she observed Posa receive several telephone calls, which she described as "standard drug sales calls." R7 at 382.

Dr. Barton later included David "Manny" Faison in the arrangement. When Faison was arrested on a firearms charge, he gave information about Dr. Barton, Locklear, and Posa to law-enforcement agents. Special Agent Louis Ryckeley of the Drug Enforcement Administration ("DEA") was contacted. DEA agents visited the pharmacies Faison identified and obtained records for Faison, Locklear, and Posa. Subsequently, Posa was arrested and indicted with one count of

2

conspiring to dispense oxycodone illegitimately, to possess oxycodone with intent to distribute it, and to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 1), and two counts of distributing and possessing oxycodone with intent to distribute, on September 22, 2010, and October 23, 2010, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 2-3).

Based on records obtained from several pharmacies and carbon copies of Dr. Barton's prescriptions, Agent Ryckeley determined Dr. Barton had given Posa a total of 248 prescriptions for a total of 57,855 thirty-milligram oxycodone pills between May 2009 and October 2010. Additionally, Posa had filled at least 164 of those prescriptions at 13 different pharmacies, which accounted for 38,655 pills between May 2009 and October 2010. Based on his experience, Agent Ryckeley testified the number of prescriptions Posa filled was not consistent with personal use, but was a "clear indication of drug trafficking activity." R8 at 507.

At trial, Posa testified no agreement to distribute oxycodone existed. Instead, he merely had filled Dr. Barton's prescriptions, had kept some of the pills for his own use, and had given the remainder to Dr. Barton. Posa also testified he never sold oxycodone.

As part of her instructions to the jury, over Posa's objection, the district judge included:

> When a defendant voluntarily and intentionally offers an explanation or makes some statement tending to show his innocence

3

and this explanation or statement is later shown to be false if the jury so finds, then the jury may consider whether the circumstantial evidence points to a consciousness of guilt.

Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or a statement tending to establish his innocence.

Stated another way, a statement by the defendant if deemed not believable by you may be considered substantive evidence of the defendant's guilt, but it cannot be used as the sole basis to support a conviction.

R9 at 971-72.  The jury convicted Posa on all three counts of the indictment.  The district judge imposed concurrent sentences of 20 years of imprisonment on each count, to be followed by 10 years of supervised release.

On appeal, Posa argues the district judge improperly charged the jury that, if disbelieved, his statements could be used as substantive evidence of his guilt.  Posa further argues the evidence was insufficient to support his Count 1 conspiracy conviction and the evidence showed no more than a buyer-seller relationship between Dr. Barton and him.

## II. DISCUSSION

A. Jury Instruction Regarding the Defendant's Testimony

We review jury instructions de novo to determine whether they misstated the law or misled the jury to the prejudice of the party who objected to them.  *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).  When a criminal defendant testifies, the jury is free to disbelieve him and consider his disbelieved statements as substantive evidence of guilt.  *See United States v. Bacon*, 598 F.3d 772, 776

4

(11th Cir. 2010) (per curiam).  At least where some corroborative evidence of guilt exists for a charged offense, and the defendant testifies in his own defense, the testimony denying guilt may help to establish elements of the crime.  *United States v. Brown*, 53 F.3d 312, 314-15 (11th Cir. 1995).

The district judge instructed the jury that "a statement by the defendant if deemed not believable . . . may be considered substantive evidence of the defendant's guilt."  R9 at 971-72.  This instruction properly stated the law of this circuit.  *See Brown*, 53 F.3d at 314-15.  Neither of the Supreme Court cases Posa cites supports his argument this instruction contravened Supreme Court precedent. *See Bose Corp. v. Consumers Union*, 466 U.S. 485, 512, 104 S. Ct. 1949, 1966 (1984) (concluding, in the context of a civil bench trial in a product-disparagement action, a witness's testimony disclaiming "actual malice," even if discredited, was insufficient to establish malice by clear and convincing evidence); *Nishikawa v. Dulles*, 356 U.S. 129, 136-37, 78 S. Ct. 612, 617 (1958) (determining the district judge's disbelief of the plaintiff's testimony that he was drafted in a foreign army, was by itself insufficient to satisfy the government's burden of proving the plaintiff had voluntarily joined a foreign army and thus should lose his United States citizenship).  While Posa contends the instruction was improper, because it failed to distinguish between his testimony and out-of-court statements or held him to a different standard than other witnesses, he has failed to submit authority for his

argument.  Consequently, he has not shown the challenged instruction was impermissible.

Posa also argues the challenged instruction allowed the jury to use his testimony to fill a gap in the government's case, including the government's failure to produce any evidence that he gave pills to Dr. Barton on the dates charged in Counts 2 and 3.  This argument is unavailing.  Locklear testified (1) Posa and Dr. Barton had an arrangement in which Posa used profits from selling oxycodone to buy more pills, (2) she saw Posa pay for prescriptions, (3) she saw Posa give oxycodone to his brother, and (4) she observed Posa engaging in telephone calls that appeared to relate to drug deals.  Moreover, Agent Ryckeley testified from his experience the number of pills Posa acquired indicated distribution and not personal use.  Because the jury heard testimony from other witnesses sufficient to support a finding that Posa intended to distribute oxycodone on the two charged occasions, the record does not support Posa's claim of a gap in the government's case that required filling.

B. Sufficiency of Conspiracy Evidence

We review de novo a district judge's denial of a motion for a judgment of acquittal on sufficiency-of-the-evidence grounds, consider the evidence in the light most favorable to the government, and draw all reasonable inferences and credibility choices in the government's favor.  *United States v. Friske*, 640 F.3d

1288, 1290-91 (11th Cir. 2011).  To sustain a conviction for a conspiracy, the government must prove beyond a reasonable doubt (1) an illegal agreement existed, (2) the defendant knew of the essential objects of the agreement, and (3) the defendant, with knowledge, voluntarily joined it.  *See United States v. Westry*, 524 F.3d 1198, 1212 (11th Cir. 2008) (per curiam).

Because a conspiracy is "predominantly mental in composition," circumstantial evidence may be used to prove its elements.  *Id.* (citation and internal quotation marks omitted).  Intent to distribute may be inferred from the amount of the drug involved.  *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005).  Similarly, an agreement may be inferred where the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs from the seller to the buyer.  *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999) (per curiam).  A conspiracy conviction, however, may not solely be based on a buyer-seller relationship.  *See United States v. Dekle*, 165 F.3d 826, 828-29 (11th Cir. 1999).  If the evidence shows only a buyer-seller relationship, the fact that the sales are repeated, without more, does not support an inference that the buyer and seller have the same joint criminal objective to distribute drugs.  *See id.* at 828-30 (determining evidence that a doctor issued at least 129 prescriptions for controlled substances to 4 women in exchange for sexual acts or nude

7

photographs was insufficient to establish a conspiracy to distribute controlled substances).

When a defendant testifies in his own defense, the jury may disbelieve his testimony and consider it as substantive evidence of his guilt. *Brown*, 53 F.3d at 314. Therefore, when a defendant chooses to testify, he runs the risk that, if disbelieved, the jury may conclude the opposite of his testimony is true. *Id.* The proposition that the defendant's testimony denying guilt may establish elements of the crime applies with special force to subjective elements, such as intent or knowledge. *Id.* at 315.

The testimony of Locklear and Agent Ryckeley was corroborated by (1) evidence that Posa and Dr. Barton were engaged in a continuing relationship that had resulted in the repeated transfer of oxycodone, *see Mercer*, 165 F.3d at 1335 (recognizing an agreement may be inferred when there is evidence showing a continuing relationship resulting in the repeated transfer of illegal drugs); (2) the quantity of drugs involved, *see Hernandez*, 433 F.3d at 1333 (determining an intent to distribute could be inferred from the amount of drugs involved); and (3) Posa's testimony, which the jury was entitled to disbelieve and consider as substantive evidence of his guilt, *see Brown*, 53 F.3d at 314-15 (acknowledging a defendant's testimony denying guilt may establish elements of a crime such as intent). Viewing this evidence in the light most favorable to the government, and drawing

8

all reasonable inferences and credibility choices in the government's favor, *Friske*, 640 F.3d at 1290-91, the evidence was sufficient for the jury to find Posa and Dr. Barton had agreed to distribute and possess with intent to distribute oxycodone. *See Westry*, 524 F.3d at 1212 (discussing the elements required to establish conspiracy to distribute drugs).

**AFFIRMED.**