[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2011
JOHN LEY
CLERK

_____

No. 09-14915

_____

D. C. Docket No. 08-00010-CR-1-SPM-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS FRISKE,
a.k.a. Denny,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 18, 2011)

Before MARTIN and BLACK, Circuit Judges, and RESTANI,* Judge.

MARTIN, Circuit Judge:

_____

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting
by designation.

Dennis Friske appeals his conviction for attempting to obstruct an official proceeding, by attempting to dispose of and hide assets involved in a forfeiture proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. He argues that the District Court erred in denying his motion for judgment of acquittal because the government failed to introduce sufficient evidence to permit the jury to find that he knew of the existence of the forfeiture proceeding. We agree. We therefore vacate Friske's conviction and sentence, reverse the District Court's denial of Friske's motion for judgment of acquittal, and remand the case to the District Court for entry of judgment of acquittal.[1]

## I.

Friske was charged with attempting to obstruct a forfeiture proceeding involving the property of William Erickson, who had been indicted for conspiracy and drug charges relating to a marijuana grow operation. The government introduced the following evidence at trial: On October 13, 2008, Erickson, who was in jail at the time, placed a phone call to Friske, which was recorded. In that conversation, Friske, who lived in Wisconsin, told Erickson he was coming to visit Erickson in Florida that Wednesday, October 15, 2008. Erickson discussed with

_____

[1] Because we vacate Friske's conviction and remand to the District Court to enter a judgment of acquittal, we need not address Friske's other arguments challenging the District Court's denials of his motions to sever and the prosecutor's closing argument.

Friske a "little repair job" at Erickson's home in Florida, which would require Friske to wear gloves and get on his hands and knees under the pool decking at the rear of the house. Erickson referred to "three things" near the pool pump. He told Friske to visit him at the jail afterwards, and to do so as soon as possible "if something screws up."

Upon hearing the recording of the October 13, 2008 conversation, law enforcement agents, believing that Friske was going to Erickson's property to recover money or drugs buried under the pool decking, obtained a search warrant. When Friske did not arrive at the property as expected on October 15, 2008, the agents executed the warrant. Buried under the pool deck, the agents found three sealed pieces of PVC pipe containing United States currency. In total, the agents recovered $375,000.00. Before they left, the agents smoothed out the ground in the area where they dug up the pipes so it looked as it had when they arrived.

The next day, October 16, 2008, Friske explained to Erickson, in another recorded phone conversation, that he did not go to Erickson's property as planned the day before, October 15, 2008, beause he had been delayed at the airport and had problems with a credit card and rental car. But Friske stated that he was going to the property that day and would arrive there in about an hour.

The agents returned to Erickson's residence, and found that Friske was

3

already there.  They encountered him walking towards them on the entry road about 200 yards inside the north gate of the property.  Friske was wearing gloves and holding a flashlight.  He was wet, and had dirt on his chest and arms.  The agents identified themselves and asked Friske why he was there.  He told them that he had come to recover and move some items for a friend.  He told the agents they could look at the items he had retrieved and loaded into his van.  He gave the agents written and oral permission to search the vehicle.  In a briefcase in the front seat of the van, the agents found several letters from Erickson to Friske.  The letters included hand-drawn diagrams of the property, showing among other things the location where the pipes were ultimately discovered.  In one of the letters, Erickson also asks Friske to do him a "a big favor," by coming to Florida for a few days to "find a couple of things [at Erickson's house] to take back to [Wisconsin]." He hastens to add that it would be "nothing illegal for [Friske]," just "important paper work I have put away."

While the search of the van was taking place, one of the agents told Friske—falsely—that they had been watching him digging around the pool deck. Friske became agitated and explained that he had been inspecting the pool deck because there was wood rot that he was going to fix.  The agent testified at trial that he had viewed the condition of the pool deck the day before, when digging up

4

the three PVC pipes, and had not observed any wood rot. When Friske tried to point out the wood rot under the deck, the agent saw that two new holes had been dug under the pool deck since the agents had smoothed over the surface the day before. The agent told Friske that they had been listening to his conversations with Erickson and knew that he had come down to pick up money that had been concealed on the property. According to the agent, Friske responded: "Look, these are my friends. I'm not going to cooperate against my friends." After reviewing Friske's driver's license and taking his finger prints, the agents allowed him to leave.

Later that same day, October 16, 2008, Friske and Erickson spoke on the phone three times. In those conversations, Friske explained that DEA agents had been on Erickson's property and "didn't buy it" when Friske explained that he was looking at pilings underneath the deck because he was fixing up the house and securing the property for Erickson.

II.

Friske argues that the District Court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support his conviction. "We review de novo a district court's denial of judgment of acquittal on sufficiency of evidence grounds." United States v. Browne, 505 F.3d 1229,

1253 (11th Cir. 2007). "In reviewing a sufficiency of the evidence challenge, we consider the evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor." Id. "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). But "[w]hen the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction." United States v. Mendez, 528 F.3d 811, 814 (11th Cir. 2008).

Friske was convicted of violating 18 U.S.C. § 1512(c)(2), which provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." To establish a violation of § 1512(c)(2), the government must prove beyond a reasonable doubt that:

> (1) there was an official proceeding taking place, [in this case a forfeiture proceeding]; (2) [Friske] engaged in conduct which constituted a substantial step toward the commission of the crime of obstruction of an official proceeding; (3) [Friske] acted corruptly, i.e.,

6

with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the [forfeiture proceeding]; and (4) the natural and probable effect of [Friske's] conduct would be the interference with the due administration of justice.

United States v. Mintmire, 507 F.3d 1273, 1289 (11th Cir. 2007) (quotation marks and alterations in original omitted).

Friske argues that the district court erred in denying his motion for judgment of acquittal because the government did not offer evidence sufficient to support a finding that he knew of the forfeiture proceeding.[2] As an initial matter, we must decide whether the government was required to prove that Friske knew of the forfeiture proceeding. In United States v. Aguilar, 515 U.S. 593, 115 S. Ct. 2357 (1995), the Supreme Court held that a similar statute, 18 U.S.C. § 1503, which prohibits "corruptly or by threats of force, . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to inflence, obstruct, or impede, the due administration of justice,"[3] contains "a 'nexus' requirement—that the act must have a relationship in time, causation, or logic with the judicial proceedings." Id.

_____

[2] Because we conclude that the government was required to introduce sufficient evidence for the jury to find that Friske knew his actions were likely to affect a forfeiture proceeding, and that it failed to do so, we do not address Friske's argument that the evidence was also insufficient to support the jury's finding that there was a forfeiture proceeding taking place with respect to Erickson's property.

[3] We have previously observed that the elements of § 1503 are analogous to the elements of § 1512(c)(2). See Mintmire, 507 F.3d at 1289.

7

at 599, 115 S. Ct. at 2362. As our sister circuits have explained, "[t]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the mens rea requirement of 'corruptly' obstructing." United States v. Phillips, 583 F.3d 1261, 1264 (10th Cir. 2009) (quotation marks omitted); see also United States v. Quattrone, 441 F.3d 153, 170 (2d Cir. 2006) (using same language to describe nexus requirement as applied to § 1503). In Aguilar, the Supreme Court stated that "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." 515 U.S. at 599, 115 S. Ct. at 2362. In Arthur Anderson LLP v. United States, 544 U.S. 696, 125 S. Ct. 2129 (2005), the Supreme Court extended this requirement—that there be "a 'nexus' between the obstructive act and the proceeding"—to another similar statute, 18 U.S.C. § 1512(b)(2), which prohibits, among other things, "knowingly . . . corruptly persuad[ing] another person . . . with intent to . . . cause or induce any person to . . . withhold testimony . . . or . . . document[s] . . . from an official proceeding." Id. at 708, 125 S. Ct. at 2137.

We now join our sister circuits in concluding that § 1512(c)(2) also contains a nexus requirement as articulated in Aguilar. See Phillips, 583 F.3d at 1264; United States v. Reich, 479 F.3d 179, 186 (2d Cir. 2007); see also United States v. Carson, 560 F.3d 566, 584 (6th Cir. 2009) (assuming arguendo that Aguilar nexus

8

requirement applies to § 1512(c)(2)).[4]  Aguilar relied on the principle that "a

person lacking knowledge of a pending proceeding necessarily lack[s] the evil

intent to obstruct."  515 U.S. at 599, 115 S. Ct. at 2362 (discussing Pettibone v.

United States, 148 U.S. 197, 207, 13 S. Ct. 542, 546–47 (1893)).  That principle

applies equally to § 1512(c)(2), because without knowledge of the forfeiture

proceeding, Friske could not know that his actions were likely to affect it.  We

recognize that § 1512(f)(1) provides that "[f]or the purposes of [§ 1512] . . . an

official proceeding need not be pending or about to be instituted at the time of the

offense."  But, as the Supreme Court observed in Arthur Anderson, "[i]t is . . . one

thing to say that a proceeding need not be pending or about to be instituted at the

time of the offense, and quite another to say a proceeding need not even be

foreseen."  544 U.S. at 707–08, 125 S. Ct. at 2137 (quotation marks omitted).

Thus, in this case, the government was required to prove that Friske knew of, or at

least foresaw, the forfeiture proceeding.[5]

_____

[4]  We are aware of no circuit that has rejected Aguilar's nexus requirement in the context of § 1512(c)(2), see Phillips, 583 F.3d at 1264, and the government has not offered any argument against applying the nexus requirement to § 1512(c)(2).  Instead, the government urges us to assume without deciding that the nexus requirement applies, but to find it satisfied in this case. But as explained below, we conclude that the nexus requirement was not satisifed here.

[5]  We emphasize that it is not necessary to prove that the defendant knew that a proceeding was pending, nor is it always sufficient to prove that the defendant "may have foreseen an official proceeding at some time in the future."  United States v. Frankhauser, 80 F.3d 641, 652 (1st Cir. 1996) (analyzing the the analagous mens rea requirement for § 1512(b)(2)(B)).  Consistent with Aguilar's nexus requirement, the government must prove that the defendant knew of or foresaw an official proceeding, and knew that his actions were likely to

9

In support of his motion for judgment of acquittal before the District Court, Friske conceded that "there [was] plenty of evidence [from which] the jury can conclude that he went under the deck to retrieve three items for Mr. Erickson," but insisted that "there [was] not one scintilla of evidence that he knew he was obtaining something that was subject to forfeiture." We agree. Although Friske was certainly acting suspiciously in his attempts to recover the three sealed PVC pipes from under the pool deck, more is required to prove a violation of § 1512(c)(2). Specifically, the government had to prove beyond a reasonable doubt that Friske knew that the natural and probable result of his actions would be the obstruction of Erickson's forfeiture proceeding. We are unable to find any evidence in the record that Friske knew of or foresaw the forfeiture proceeding. The only way the jury could conclude that Friske knew his actions were likely to affect a forfeiture proceeding, in the absence of any evidence that he was aware that a forfeiture proceeding was pending or foreseeable, would be through speculation. But speculation is not enough to sustain a conviction based on circumstantial evidence. See Mendez, 528 F.3d at 814.

Because the government offered no evidence that Friske knew that his actions were likely to affect a forfeiture proceeding, we conclude that a reasonable

affect it.

10

jury could not find, beyond a reasonable doubt, that Friske had the requisite intent to obstruct.  See Aguilar, 515 U.S. at 599, 115 S. Ct. at 2362 ("[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.").  Thus, the evidence was insufficient to support Friske's conviction under § 1512(c)(2), and the District Court therefore erred in denying Friske's motion for judgment of acquittal.

For all of these reasons, we vacate Friske's conviction, reverse the District Court's denial of his motion for judgment of acquittal, and remand the case to the District Court to enter a judgment of acquittal.

**VACATED, REVERSED and REMANDED.**