[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10327
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-00127-CG-C-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RUSSELL LOUIS TATUM, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 13, 2012)

Before HULL, WILSON and BLACK, Circuit Judges.

PER CURIAM:

After a jury trial, Defendant Russell Tatum, Jr., appeals his convictions and 120-month concurrent sentences for (1) possession with intent to distribute 157 grams of powder cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 1), and (2) possession with intent to distribute 18.2 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  On appeal, Tatum challenges the sufficiency of the evidence to support his convictions and the district court's application of a dangerous weapon enhancement at sentencing.  Tatum also contends that the district court erred when it refused to apply the penalty provisions in 21 U.S.C. § 841(b) as amended by the Fair Sentencing Act ("FSA").  After review, we affirm Tatum's convictions and the dangerous weapon enhancement, but vacate and remand for resentencing  in light of Dorsey v. United States, ____ U.S. ____, 132 S. Ct. 2321 (2012).

## I.  BACKGROUND

At trial, the following evidence was presented.

**A.    Search of 2472 Bragdon Avenue House**

Police investigated drug activity at a house on 2472 Bragdon Avenue in Mobile, Alabama.  On March 30, 2010, four Mobile County Deputy Sheriffs–John

Thornton, John McLain, Jeffery Sullivan, and Steve Leger–attempted a controlled buy from Defendant Tatum through a confidential informant ("CI").  The deputies' CI was to stop by the Bragdon Avenue house while under surveillance by the four deputies.

The CI went to and entered the Bragdon Avenue house while the deputies watched from the street inside their vehicles.  While the CI was inside the Bragdon Avenue house, an unknown vehicle stopped in front of the house.  Defendant Tatum came out of the house to speak with the two men who emerged from the vehicle.

The deputies then exited their vehicles and approached Defendant Tatum and the other two men.  The deputies announced that they were sheriff's deputies with a search warrant.[1]  When Deputy McLain approached Defendant Tatum, Tatum put his hand into his sweatshirt.  The deputies ordered Tatum and the other two men to the ground.[2]  Deputy Thornton went into the Bragdon Avenue house to ensure no one else was there.

Meanwhile, Deputy McLain searched Defendant Tatum and removed a clear

---

[1]As a result of their investigation, the deputies already had a search warrant for the house, which they planned to execute during the course of the controlled buy.

[2]At this point, the CI, who had remained inside the house, left through a side door and was secured by a fifth deputy.

plastic bag containing 27.31 grams of powder cocaine[3] from Tatum's sweatshirt pocket and some currency. Deputy McLain dropped the bag and currency on the ground. Tatum was not armed.

After Deputy Thornton checked the inside of the house, he returned outside and searched Defendant Tatum himself. Deputy Thornton found 1.73 grams of crack cocaine and more currency in Tatum's pants pockets, including $880 in prerecorded bills given to the CI to make the controlled buy. Additionally, Deputy Thornton found a pistol permit in Tatum's wallet. The address on the permit was 2472 Bragdon Avenue, and the expiration date was September 17, 2010. Deputy Thornton testified that a pistol permit is good for one year in Mobile County. After Deputy Thornton searched Defendant Tatum, Tatum stated, "Anything you find in the residence belongs to me."

Deputy Thornton went back inside the Bragdon Avenue house to search it. In the kitchen, Deputy Thornton found powder cocaine, two crack cocaine "cookies," and a baking soda box on the kitchen counter. The kitchen had a microwave, which tested positive for cocaine residue in a field test. Deputy Thornton explained that crack cocaine can be manufactured by combining powder

---

[3]On direct examination, Deputy McLain testified that the bag contained crack cocaine. On cross examination, however, Deputy McLain clarified that the bag contained powder cocaine, not crack cocaine.

cocaine and baking soda in a microwave and that crack cocaine is normally "cooked" in a Pyrex glass or a cup, making it resemble a cookie. According to Deputy Thornton, the two cookies of crack cocaine were sitting on a napkin on the counter to dry.

In a bedroom closet, Deputy Thornton found a shoe box that contained digital scales, a marijuana grinder, a small amount of marijuana,[4] $1,000 in currency and some prepackaged cocaine. The shoe box also contained a bag with some Lortab pills. Next to the shoe box was another set of scales, another marijuana grinder, a Pyrex cup and a box of sandwich bags. Deputy Thornton testified that in his experience as a narcotics investigator, scales are often employed to measure out cocaine, and sandwich bags are used for packaging illegal narcotics.

Deputy Thornton also discovered in the closet a bulletproof vest and neck collar, a "rifle-type gun," and a suitcase that had a tag marked "Tatum/Russell." Deputy Sullivan also found a vehicle registration and college application in Defendant Tatum's name, both listing the 2472 Bragdon Avenue address. The vehicle registration was dated February 25, 1999, and the college application was

---

[4]Deputy Thornton did not submit the marijuana for forensic examination. However, he testified that based on his experience as a narcotics investigator, he recognized the material as marijuana.

5

dated May 22, 1998.  The deputies found four guns in the bedroom: a Remington shotgun and a Browning scoped rifle, both in cases, and a pistol grip shotgun and a black and silver shotgun hidden under the mattress.  Subsequent testing by the Alabama Department of Forensic Science indicated that the deputies recovered 233.89 grams of powder cocaine and 27.56 grams of crack cocaine during the search.

The defense called Willie Pettway, Defendant Tatum's stepfather.  Pettway testified that he owned the house on Bragdon Avenue and that Defendant Tatum had never lived there.  Instead, Pettway maintained that, at the time of the search, Tatum lived on Tucker Street.

At the close of the evidence, the district court denied Tatum's renewed motion for a judgment of acquittal.  The jury convicted Tatum on both counts and found that Tatum's offense in Count 2 involved five grams or more of crack cocaine.

## B.    Presentence Investigation Report

The presentence investigation report ("PSI") calculated Defendant Tatum's advisory guidelines range using the pre-FSA November 2010 Sentencing Guidelines Manual.  The PSI assigned an offense level of 26 based on the 233.89 grams of cocaine powder and 27.56 grams of crack cocaine involved in the

6

offenses.  See U.S.S.G. § 2D1.1(c)(7).  The PSI increased Tatum's offense level by two levels for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1), and by two levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, for a total offense level of 30.

The PSI assigned Tatum a criminal history category of I.  The PSI listed Tatum's prior Alabama drug conviction, but assigned no criminal history points for that conviction.  Specifically, in 1998, Tatum pled guilty in Alabama state court to second degree marijuana possession and was given a one-year suspended sentence.  With Tatum's total offense level of 30 and criminal history category of I, the PSI initially calculated Tatum's advisory guidelines range as 97 to 121 months' imprisonment.

Later on, the PSI concluded that crack cocaine offense in Count 2 carried a ten-year mandatory minimum sentence.  If a defendant's § 841(a) offense involved 5 or more grams of crack cocaine and the defendant had a prior felony drug conviction, he was subject to a ten-year mandatory minimum sentence.  See 21 U.S.C. § 841(b)(1)(B)(iii) (2006).  The PSI stated that Tatum's advisory guidelines range was 120 to 121 months, pursuant to U.S.S.G. § 5G1.1.[5]  Tatum's Alabama

---

[5]The PSI further stated that the statutory maximum was 30 years' imprisonment for Count 1 and life imprisonment for Count 2.  See 21 U.S.C. § 841(b)(1)(B)(iii), (C) (2006).

drug conviction was the basis for the PSI's conclusion that, as to Count 2, Tatum was subject to the ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B).

Defendant Tatum's written objection to the PSI did not dispute the PSI's factual allegations.  Tatum did object to the PSI's two-level increase for possession of a dangerous weapon.  Tatum argued that he did not possess a weapon at the time of his arrest, and that the weapons found in the Bragdon Avenue house were hunting weapons.

Further, Tatum argued that he was not subject to a ten-year mandatory minimum sentence because the Fair Sentencing Act's amendments to § 841(b)(1) applied.  In 2010, Congress enacted the FSA, which changed the penalties in § 841(b) for crack cocaine offenses.   The FSA, among other things, raised the amount of crack cocaine in § 841(b)(1)(B)(iii) to 28 grams or more, thus eliminating the ten-year mandatory minimum for § 841(a) crack cocaine offenses involving less than 28 grams.  See Fair Sentencing Act of 2010, Pub. L. No. 111-220 § 2(a), 124 Stat. 2372 (2010).  The FSA became effective on August 3, 2010.  See id.  Tatum committed his § 841(a) crack cocaine offense on March 30, 2010.  However, Tatum was not sentenced until January 18, 2011, after the effective date of the FSA.

C.    **Sentencing Hearing**

At the January 18, 2011 sentencing hearing, Defendant Tatum objected to the two-level increase for obstruction of justice. The government conceded that it could not prove the obstruction-of-justice enhancement, and the district court did not impose it.

Tatum also argued that the two-level increase for possession of a dangerous weapon was unwarranted because he was not armed and did not have access to any guns when he was arrested. The district court overruled the objection because it was not "clearly improbable" that the guns were connected to the offense.

Tatum then argued that the FSA applied to Tatum's sentencing, and, thus, Tatum was not subject to a ten-year mandatory minimum sentence. Noting that Tatum's offenses were committed prior to the FSA's August 3, 2010 effective date, the district court concluded that the FSA did not apply and overruled the objection. Alternatively, Tatum contended he was eligible for safety-valve relief from the mandatory minimum sentence, pursuant to U.S.S.G. § 5C1.2. The district court disagreed because of the firearms found at the Bragdon Avenue residence.

The district court found that, without the obstruction-of-justice enhancement, Tatum's total offense level was 28, which, with a criminal history category of I, resulted in an advisory range of 78 to 97 months. However, due to § 841(b)(i)(B)'s mandatory minimum ten-year sentence, the district court

9

determined that the guidelines sentence was 120 months.  See U.S.S.G. § 5G1.1.

Before sentencing Tatum, the district court stated, "For your family's sake, I'm

sorry that the law requires that I give you the mandatory minimum.  Because that's

what I believe the law does require me to do."

The district court sentenced Tatum to 120 months' imprisonment on both

counts, to be served concurrently.  Tatum filed this appeal.

## II.  DISCUSSION

### A.    Sufficiency of the Evidence

We first conclude that the government's evidence was sufficient to support

the jury's guilty verdict on both counts.[6]  To convict a defendant of possession

with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), the

government must prove: (1) knowledge, (2) possession, and (3) intent to

distribute.  United States v. Mercer, 541 F.3d 1070, 1076 (11th Cir. 2008).

Knowledge, possession and intent can be proved by direct or circumstantial

evidence.  United States v. Poole, 878 F.2d 1389, 1391-92 (11th Cir. 1989).

"Constructive possession is sufficient for the possession element, and can be

---

[6]We review de novo a district court's denial of a motion for judgment of acquittal on sufficiency of the evidence grounds.  United States v. Friske, 640 F.3d 1288, 1290 (11th Cir. 2011).  We review the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor.  Id. at 1290-91.

established by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." Id. at 1392.

Here, the government introduced ample evidence to establish all three elements of the § 841(a) offenses. The trial evidence, viewed in the light most favorable to the government and the jury's verdict, showed that when Tatum left the Bragdon Avenue house, he had on his person cocaine and the prerecorded bills the CI used to conduct the controlled buy. In the kitchen of the Bragdon Avenue house, from which Tatum exited immediately prior to the search, deputies found both cocaine powder and two recently "cooked" cookies of crack cocaine. The cookies were sitting out on the kitchen counter top, along with a box of baking soda, which was used to convert the powder into crack. The deputies also found in the house other materials used to cook crack cocaine and package it for sale, such as a Pyrex cup, plastic baggies and scales, as well as some cocaine already prepacked. Tatum told the deputies at the scene that everything in the house was his, and the deputies found documents listing the Bragdon Avenue house as his address. These circumstances were more than sufficient for a jury to reasonably find that Tatum had either actual or constructive possession of the crack and powder cocaine, that his possession was knowing and that he intended to distribute the drugs.

11

**B.    Dangerous Weapon Enhancement**

Tatum argues that the district court improperly applied a two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1.

Pursuant to U.S.S.G. § 2D1.1(b)(1), a defendant's offense level increases by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1).  The two-level increase applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  Id. § 2D1.1, cmt. n.3(A).  Once the government demonstrates by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.  United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).[7]

Here, the district court did not err in applying § 2D1.1(b)(1)'s two-level enhancement.  Based on the trial evidence and the undisputed facts in the PSI, the deputies found multiple firearms in various locations in the same house as Tatum's drugs and drug distribution paraphernalia.  One of the firearms was found in the closet with some of the drugs and drug paraphernalia.  Several other firearms,

_____

[7]We review for clear error the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1), and we review de novo the application of the Sentencing Guidelines to those facts.  United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).

12

including one reported stolen from the Mobile Police Department, were found under a mattress in a bedroom. These facts are sufficient to carry the government's burden to show that the firearms were present at the site of Tatum's charged drug offenses. See United States v. Hunter, 172 F.3d 1307, 1309 (11th Cir. 1999) (concluding firearms were present at the site of the charged drug trafficking because they were found in defendant's home along with plastic baggies, glass vials, mixing spoons, diluting agent and transaction records); United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998) (concluding firearm was present at the site of the charged conduct because defendant's loaded gun was found in an office adjacent to the area where the cocaine was discovered).

Tatum, in contrast, did not carry his burden to show that the connection between the firearms and his drug offenses was clearly improbable. Although Tatum argued the firearms were hunting weapons, he did not present any evidence to support his claim at either his trial or sentencing. Accordingly, we find no error in the district court's application of the two-level dangerous weapon enhancement.

## C.    Fair Sentencing Act

At sentencing, the district court declined to apply the penalty provisions in 21 U.S.C. § 841(b) as amended by the FSA because Tatum's § 841(a) crack cocaine offense in Count 2 was committed on March 30, 2010, before the FSA's

13

August 3, 2010 effective date. The Supreme Court recently held that the FSA's "more lenient penalty provisions apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3." Dorsey v. United States, ____ U.S. ____, 132 S. Ct. 2321, 2326 (2012). We therefore vacate Tatum's sentence and remand for the limited purpose of resentencing in light of Dorsey.[8]

**AFFIRMED IN PART; VACATED AND REMANDED.**

---

[8]Because we vacate Tatum's 120-month sentences, we do not address his argument that his sentences were unreasonable. Furthermore, even after the FSA, a defendant's statutory maximum increases if he has a prior felony drug conviction. See 21 U.S.C. § 841(c) (providing for a statutory maximum of thirty years, rather than twenty years, when a defendant has a prior felony drug conviction). On remand, the parties also should address Tatum's 1998 marijuana possession conviction and whether the government satisfied the notice requirements in 21 U.S.C. § 851(a)(1). The district court should make a finding as to what the statutory maximum is on each count and why.

14