[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 11-15798; 12-14810
_____

D.C. Docket No. 8:10-cr-00213-JSM-EAJ-5


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

TINA SCHNEIDER,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 20, 2013)

Before CARNES, HULL, and ANDERSON, Circuit Judges.

PER CURIAM:

From at least 2006 through the spring of 2009, a Florida truck driver named

Elier Boza stole nearly 200 trailer-loads of used car batteries owned by Johnson

Controls, Inc., weighing a total of over 7 million pounds, which were destined for a

recycling plant operated by EnviroFocus Technologies. Virtually all of the stolen batteries were delivered and sold to a small scrap-metal business, Gator Core, which resold the goods to companies throughout the country for significant profits. In 2008 alone, Gator Core received over $5 million in wire transfers to its bank account based on the sale of the batteries.

As a result of their involvement in the receipt and sale of the stolen car batteries, five Gator Core employees, including Vice President Tina Schneider, were charged in a 42-count second superseding indictment. Schneider was indicted on a total of 20 criminal counts: one count of conspiring to commit wire fraud and to structure financial transactions, in violation of 18 U.S.C. § 371 (Count 1); eight counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 2 through 9); one count of conspiring to launder the proceeds of the wire fraud, in violation of 18 U.S.C. § 1956(h) (Count 10); three counts of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. §§ 1957 and 2 (Counts 11 through 13); and seven counts of structuring financial transactions to evade the $10,000 bank reporting requirements, in violation of 31 U.S.C. § 5324(a)(3) and (d) and 18 U.S.C. § 2 (Counts 30 through 37).

After a 13-day trial, a jury returned a guilty verdict against Schneider on all counts. The district court set aside the jury's verdict and entered a judgment of acquittal on the conspiracy and substantive counts related to wire fraud and money

2

laundering, as charged in Counts 1 through 13, based solely on a finding that the government failed to present sufficient evidence that Schneider knew that the batteries were stolen. The court entered a judgment of conviction on the remaining counts and sentenced Schneider to concurrent terms of 12 months and 1 day in prison on those counts. In these two consolidated appeals, the government contends that the district court erred in entering a post-verdict judgment of acquittal on Counts 1 through 13 because it presented sufficient evidence from which a reasonable jury could infer that Schneider either knew the batteries were stolen or deliberately avoided such knowledge. The government requests that we vacate the judgment of acquittal, reinstate the jury's verdict in its entirety, and remand for resentencing on all counts of conviction.

I.

A district court's decision to set aside a jury verdict by entering a judgment of acquittal based on the insufficiency of the evidence "is entitled to no deference" on appeal. United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004) (quotation marks omitted). Instead, we review de novo whether there is sufficient evidence to support a jury verdict, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in its favor. United States v. Cochran, 683 F.3d 1314, 1321 (11th Cir. 2012). "A jury's verdict cannot be overturned if any reasonable construction of the evidence

would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Friske, 640 F.3d 1288, 1291 (11th Cir. 2011) (quotation marks omitted). To sustain a conviction, "[t]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." Id. (quotation marks omitted).

The government presented ample evidence from which a reasonable jury could find beyond a reasonable doubt that Schneider either knew that the used car batteries were stolen or deliberately avoided such knowledge, which legally amounts to the same thing. See United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (noting that "the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance," and explaining that a party who deliberately avoids investigating suspicious circumstances "because [she] wishes to remain in ignorance" is "deemed to have knowledge"). Schneider, as Vice President of Gator Core and the person in charge of managing its office, business records, finances, and banking, was actively involved in the company's purchase and sale of the stolen batteries, virtually every aspect of which occurred under highly suspicious circumstances.

The evidence showed that Boza made frequent late-night deliveries of full trailer-loads of used car batteries, in violation of state regulations; often did so

4

while wearing a uniform and driving a truck bearing the name of a commercial trucking company; and received sums as low as half the fair market value of the batteries, all of which suggested that he was not the legitimate owner of the goods or authorized to dispose of them. See Fla. Stat. Ann. § 538.26(1) (2006) (prohibiting scrap-metal businesses from making purchases before 6 a.m. and after 9 p.m.). The batteries themselves were stacked on shrink-wrapped pallets emblazoned with Johnson Controls' name, and bore individual stickers identifying their actual distributor, Advanced Auto Parts, which Gator Core employees diligently removed before the batteries were resold. The influx of massive quantities of used batteries was also inconsistent with Gator Core's usual business; Boza was the only customer who brought in trailer-loads of used batteries or made nighttime deliveries. A reasonable jury could have concluded that Schneider was aware of these suspicious circumstances given that she lived in a trailer on Gator Core's premises, occasionally participated in the process of unloading the batteries, and oversaw the company's finances.

The evidence also showed that, with rare exception, Schneider paid Boza in large sums of cash, which she obtained by structuring cash withdrawals from Gator Core's bank account, sometimes multiple times each day, in amounts just below the $10,000 bank reporting requirements. A jury could reasonably infer that Schneider deliberately structured the withdrawals to avoid leaving a paper trail of

what she knew were illicit purchases.  Although Schneider suggests that the structured withdrawals were motivated by benign reasons unrelated to the legal status of the batteries—chiefly, a desire to avoid having to wait while a bank employee prepared a mandated currency transaction report—the jury was free to choose among the reasonable conclusions to be drawn from the evidence.  See Friske, 640 F.3d at 1291.  Moreover, while Schneider was responsible for managing Gator Core's business records, the company seldom documented its purchases from Boza or required him to sign any receipts, which was inconsistent with both industry custom and Florida law.  See Fla. Stat. Ann. § 538.19 (2006) (requiring secondary metals recyclers to "maintain a legible record of all purchase transactions," including a description of the property purchased, the identities of the buyer and seller, and a signed statement from the seller "that she or he is the rightful owner of, or is entitled to sell," the property being sold).  And the few records that were created falsely indicated that the batteries were purchased by a company called "Mike's Recycling."

In sum, the evidence put forward by the government showed that nothing about Gator Core's purchase of the stolen batteries was regular: not the trucks, trailers, or uniform of the man delivering them; not the frequent late-night deliveries; not the sheer volume of goods, which was inconsistent with the rest of the company's business; not the shrink wrap, pallets, and stickers associated with

6

the batteries; not the frequency and amount of cash payments made to Boza, which amounted to over half a million dollars over the life of the scheme; not the below-market prices paid or the unusually high profit margins made upon resale; not the absence of customary and legally required paperwork; and certainly not the flurry of structured cash withdrawals.  Coupled with Schneider's role in purchasing the batteries and her managerial duties at Gator Core, the evidence was sufficient to allow a reasonable jury to conclude that she knew the batteries were stolen or, at the very least, that she deliberately turned a blind eye to the matter.

The government was not required to rebut every reasonable hypothesis other than guilty and the evidence presented, when viewed in the light most favorable to the prosecution, was sufficient to warrant a reasonable inference that Schneider knowingly participated in a scheme to commit wire fraud and knowingly engaged in financial transactions involving the proceeds of illegal activity.  See 18 U.S.C. §§ 371, 1343, 1956(h), and 1957; see also United States v. Hill, 643 F.3d 807, 862 (11th Cir. 2011); United States v. Medina, 485 F.3d 1291, 1300 (11th Cir. 2007); United States v. Johnson, 440 F.3d 1286, 1289 (11th Cir. 2006).

For these reasons, we vacate the judgment of acquittal and Schneider's sentences in their entirety, and remand with instructions for the district court to reinstate the jury's verdict and resentence Schneider on all counts of conviction.

**VACATED AND REMANDED.**