[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11133
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cr-00177-ACC-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ABUBAKIR KHIDIROV,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 27, 2013)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Abubakir Khidirov appeals his conviction for knowingly entering into a marriage for the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(c).  Khidirov argues that the district court erred in denying his motion for a judgment of acquittal and motion for a new trial.  He specifically argues that the testimony of two convicted felons—his ex-wife Rosemary Torres and Ender Rodriguez—was insufficient to support his conviction in light of his trial testimony that he never intended to enter into a sham marriage.  Upon review of the record and consideration of the parties' briefs, we affirm.

I.

On July 25, 2012, a grand jury charged Khidirov and his ex-wife Rosemary Torres with knowingly entering into a marriage for the purpose of evading immigration laws.  See 8 U.S.C. § 1325(c).  Torres pleaded guilty on November 25, 2012.  Khidirov proceeded to trial on November 26, 2012.

At trial, the government presented evidence that Khidirov, a citizen of Uzbekistan, wanted to obtain residency to stay in the United States.  To achieve this goal, Khidirov met with Ender Rodriguez about arranging a marriage to a U.S. citizen.  Rodriguez testified that he had a long and successful history of coordinating sham marriages between U.S. citizens and non-citizens seeking immigration status, arranging more than 100 fraudulent marriages and preparing

and filing all the necessary forms for these non-citizens to apply for permanent residence.

In exchange for $3500, Rodriguez arranged for Khidirov to marry Rosemary Torres, a U.S. citizen who had also married two of Rodriguez's previous clients who were seeking legal immigration status. After Khidirov and Torres obtained their marriage license on August 10, 2007, Rodriguez filed immigration forms on Khidirov's behalf. Rodriguez also coached Khidirov and Torres to prepare for their first interview with U.S. Citizenship and Immigration Services (USCIS) by opening a joint bank account, co-signing a lease, and obtaining utility bills listing both of their names. Rodriguez also provided Khidirov and Torres with a catalog of questions that could be asked at the interview.

Torres testified that the sole purpose of the marriage was for Khidirov to obtain his permanent residence, and she made it clear to Khidirov from the beginning that she had no romantic interest in him because she was a lesbian. Khidirov and Torres took pictures that would make their marriage appear legitimate, but after the interview with USCIS, they each went their separate ways. Torres co-signed a lease with Khidirov for a home in Orlando but they never lived there together. Torres also opened a joint bank account with Khidirov, which she never accessed.

3

After Khidirov successfully gained his conditional residency in 2008, Torres stated that she lost contact with Khidirov until 2010, when he contacted her through MySpace.  Khidirov had filed an I-751 petition to remove the conditions from his residency and needed Torres to attend a second interview with USCIS.  Torres, however, refused to attend the interview, even though Khidirov offered her additional payment.  She also testified that the signature which appeared on the I-751 petition was not her handwriting.

Khidirov appeared for the interview alone on October 26, 2010.  Contrary to Torres's trial testimony, Khidirov told USCIS that he and Torres had lived together after they got married for a year and a half to two years before separating.  These statements were also inconsistent with his I-751, which stated that he and Torres were still living together in Orlando.  USCIS denied Khidirov's petition on June 22, 2011.

Khidirov testified in his own defense.  He denied that Rodriguez had introduced Torres to him for the purpose of entering into a sham marriage.  Instead, Khidirov maintained that he met Torres in May 2007 while working together at the Prime Outlet Mall.  After dating for several months, living together, and getting married in August 2007, Khidirov claimed that Torres introduced him to Rodriguez to prepare and file all the necessary forms to apply for a green card.

Khidirov testified that he never knew that Rodriguez was in the business of

4

orchestrating sham marriages, and he claimed that Torres never told him that she had been marrying Rodriguez's clients for money. Khidirov also insisted that he never intended to trick anybody and now feels like the victim of a sham.

The jury found Khidirov guilty as charged in the indictment. On March 7, 2013, the district court sentenced Khidirov to two years of probation.

## II.

Khidirov argues that the district court erred in denying his motion for judgment of acquittal and his motion for a new trial because the evidence was insufficient to support his conviction.

We review de novo a district court's denial of judgment of acquittal on sufficiency of evidence grounds. United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). In reviewing a sufficiency of the evidence challenge, we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor. Id. A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt. United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991). The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial. United States v. Poole, 878 F.2d 1389, 1391 (11th

Cir. 1989).  But when the government relies on circumstantial evidence, the conviction must be supported by reasonable inferences, not mere speculation. United States v. Friske, 640 F.3d 1288, 1291 (11th Cir. 2011).

We affirm because there was sufficient evidence presented at trial to find Khidirov guilty of marriage fraud beyond a reasonable doubt.  To establish the crime of marriage fraud, the government must show that the defendant (1) knowingly entered into a marriage and (2) the marriage was for the purpose of evading any provision of the immigration laws.  8 U.S.C. § 1325(c).  The first prong of § 1325(c) is undisputed because Khidirov admitted that he married Torres.

As for the second prong, a reasonable jury could conclude that Khidirov entered into the marriage for the purpose of evading the immigration laws.  Both Torres and Rodriguez testified that Khidirov married Torres to obtain lawful permanent resident status.  Rodriguez also testified that he explained to Torres and Khidirov what documents they needed to make their marriage appear legitimate and helped them prepare for their interview with immigration authorities. Likewise, Torres testified that Rodriguez introduced her to Khidirov and that the sole purpose of the marriage was for Khidirov to obtain permanent resident status. She further testified that they never lived together, shared a bank account, or had a

real romantic relationship because she was clear with Khidirov from the beginning that she was a lesbian.

Khidirov argues that the testimony of two felons—Rodriguez and Torres—cannot be sufficient to uphold his conviction because their testimony was not credible. We have held, however, that the testimony of an accomplice can be sufficient to prove guilt, even though the witness is an admitted wrongdoer and even if the testimony is uncorroborated. Craig v. Singletary, 127 F.3d 1030, 1044-45 (11th Cir. 1997) (en banc); see United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (jury entitled to believe government's witnesses even if they consist of "an array of scoundrels, liars and brigands").

Furthermore, we do not review the credibility determinations of the jury unless it is testimony that is "unbelievable on its face," such as "testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (alteration omitted) (quotation marks omitted); see also United States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005) (rejecting defendant's "invitation to this Court to revisit the credibility determinations of the jury"). Khidirov has not argued that Rodriguez and Torres's testimony cannot be believed on its face. He merely disagrees with the jury's decision to credit Rodriguez and Torres's testimony. Because we find that this

7

testimony is not unbelievable on its face, we must accept this determination by the jury.

Finally, because Khidirov testified in his own defense, the jury was free to disbelieve Khidirov's testimony and use his statements as substantive evidence of his guilt.  United States v. Tobin, 676 F.3d 1264, 1287 (11th Cir. 2012).  In fact, where there is "some corroborative evidence" of guilt, a defendant's testimony "may establish, by itself, elements of the offense."  United States v. Brown, 53 F.3d 312, 314–15 (11th Cir. 1995).  This rule applies with "special force" where the element at issue is the defendant's intent.  Tobin, 676 F.3d at 1287.  For these reasons, a defendant's decision to testify in his own defense has "tremendous strategic importance."  Id. (quoting United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc)).  When Khidirov elected to testify in his own defense, the jury was free to reject his testimony and use his denials as evidence of guilt.

Because there was sufficient evidence presented at trial to support Khidirov's conviction, we affirm.

**AFFIRMED.**