[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12387

_____

D.C. Docket No. 0:13-cr-60220-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTINA M. KITTERMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 1, 2015)

Before JORDAN, JULIE CARNES, and LINN,* Circuit Judges.

LINN, Circuit Judge:

_____

\* Honorable Richard Linn, United States Circuit Judge for the Federal Circuit, sitting by designation.

Christina Kitterman appeals her conviction and sentence for wire fraud.  She argues that the district court committed reversible error in finding sufficient evidence to warrant denying her motion for judgment of acquittal, in its evidentiary rulings, and in its sentencing determination.  Because there is sufficient evidence that Kitterman had the intent necessary to commit wire fraud, and because any errors the district court may have made in admitting evidence or in sentencing Kitterman were harmless, we affirm.

## ANALYSIS[1]

This court has jurisdiction pursuant to 18 U.S.C. § 3742(a) (2012) and 28 U.S.C. § 1291 (2012).

### a.    Standard of Review

"We review *de novo* a district court's denial of judgment of acquittal on sufficiency of evidence grounds. . . .  In reviewing a sufficiency of the evidence challenge, we consider the evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor."  *United States v. Friske*, 640 F.3d 1288, 1290–91 (11th Cir. 2011) (citations and internal quotation marks omitted).  A conviction is supported by sufficient

---

[1] As we write for the parties, we assume familiarity with the underlying facts.

2

evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

We review a district court's evidentiary rulings for abuse of discretion and, if the evidentiary objection is preserved, also address harmless error. *See Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1309 (11th Cir. 2014); *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006).

We review a district court's determination of loss in applying the sentencing guidelines for clear error. *See United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007). Even if the district court clearly erred in its calculation of loss, we will not reverse the district court's sentence if the error is harmless. *United States v. Barner*, 572 F.3d 1239, 1247–48 (11th Cir. 2009). An error in applying the sentencing guidelines will be harmless "if the district court would have imposed the same sentence without the error," *id.* at 1248, and the sentence is substantively reasonable.

We review the substantive reasonableness of the sentence by "assum[ing] that the guidelines issue should have been decided in the way the defendant argued and the advisory range reduced accordingly—and then ask[ing] whether the final sentence resulting from consideration of the § 3553(a) factors would still be

3

reasonable." *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006).  We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

### b.    Sufficiency of the Evidence

Kitterman concedes that the emails and telephone call described in the indictment were transmitted "by wire in interstate commerce," but argues that there is insufficient evidence that she had the intent to defraud, as required by 18 U.S.C. § 1343 (2012).  According to Kitterman, when she impersonated the Florida Bar official she thought she was convincing defendants who had already agreed to settle their cases to pay money they already owed.  The government responds that there was sufficient testimony for a jury to infer that Kitterman believed she was talking to investors and intended to deceive them.

Sufficient evidence supports the jury's determination.  A jury could reasonably credit Glass's testimony that, on the call, Kitterman said "the reason for the complaints . . . was unfunded or non-loaned loans."  If the jury credited Glass's testimony, it could justifiably infer that Kitterman believed she was talking to people who could loan money, namely, investors.  A jury could also reasonably credit Rothstein's testimony that Kitterman knew she was talking to Ari Glass and "she knew that Ari Glass was associated with the New York hedge funds," which

4

were investors. This testimony is supported by Rothstein's email to Kitterman stating that he was "waiting for ari" to begin the call. Given the status of the investors, there was sufficient evidence that a jury could believe that Kitterman intended to cause "the deprivation of something of value by . . . deceit." *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011).

### c.    Admission of Evidence

At trial, Kitterman objected to the introduction of evidence about her prior illegal campaign contributions, her association with members of the mafia, and her substance abuse. On appeal, Kitterman continues to argue that this evidence was inadmissible and prejudicial.

### i.    Unlawful Campaign Contributions

Kitterman contends that the evidence of her unlawful campaign contributions is unrelated to the wire fraud charge and is prejudicial. The government responds that the campaign finance contributions were admissible to prove Kitterman's intent to defraud.

The district court did not abuse its discretion in admitting the evidence of Kitterman's illegal campaign contributions. The central issue in this case was Kitterman's intent when she posed as the Florida Bar official during the phone call, as Kitterman claims that she was mistaken about the identities of the people on the

5

call.  That Kitterman previously engaged in deceptive acts at Rothstein's behest makes it less likely that she engaged in the charged offenses by mistake.  *See* Fed. R. Evid. 404(b) (evidence of past crimes "may be admissible for . . . proving . . . intent [or] absence of mistake").  Moreover, the probative value was not outweighed by any prejudicial effect, because evidence of campaign fraud is "of the 'white collar' variety, [which] is not the type that would ordinarily inflame or prejudice a jury." *United States v. Prosperi*, 201 F.3d 1335, 1347 (11th Cir. 2000).

### ii.    Association with the Mafia

Kitterman argues that Rothstein's testimony during cross-examination about her alleged relationship with the mafia was inadmissible because it was being used to show a criminal disposition.  The government responds that Kitterman opened the door to this testimony and that any prejudice was cured by the district court's instruction.

Although Kitterman denies opening the door to this evidence, it was defense counsel who first elicited testimony from Rothstein on direct examination that Kitterman "spent a significant amount of time" in Runway 84, a place "frequented by members and associates of Organized Crime," and that she "knew th[o]se people."  Kitterman did not move to strike this testimony nor does she now appeal its admissibility.  Thus, any harm from the prosecution's questioning of Rothstein

6

as to his relationship with Kitterman arises from the more specific information elicited on cross-examination, most notably that Kitterman was "very close" with some of the mafia members.  While it is a close call whether the district court abused its discretion in not limiting the extent of that cross-examination, any incremental harm resulting from Rothstein's testimony on cross-examination was cured by the district court's curative instruction, which the "jury is presumed to follow," *United States v. Almanzar*, 634 F.3d 1214, 1223 (11th Cir. 2011), and for which we have no reason to believe was ineffective. *See United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994) (internal quotation marks omitted) ("When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition."); *see also United States v. Mock*, 523 F.3d 1299, 1303 (11th Cir. 2008) ("[T]he district court did not err in refusing to grant Mock a mistrial when the jury learned that Mock was carrying a syringe and vial at the time of his arrest.  Mock himself referred to his illegal use of drugs in his case-in-chief, and therefore evidence that Mock carried drug paraphernalia would not likely have an additional prejudicial effect.  In any case, the district court gave the jury a curative instruction to disregard this information.").

7

### iii.    Substance Abuse

Kitterman argues that Rothstein's support for her during and after her drug rehabilitation had no proper purpose because she admitted that he could be "really nice and kind and sweet."  The government responds that Rothstein's support for Kitterman contradicts Kitterman's portrayal of Rothstein as an abusive boss, and any prejudice was cured by the district court's instruction to the jury.

The district court did not abuse its discretion in permitting the prosecution to elicit testimony regarding Rothstein's support for Kitterman both during and after her drug rehabilitation.  Kitterman's testimony painted Rothstein as a generally abusive person.  For instance, she testified that "[w]henever" she gave Rothstein work to approve he would deride it, and he "quite frequently" threatened to fire her.  Rothstein's support for Kitterman while she was recovering from drug addiction contradicts this picture.  In any event, any error was harmless as the district court issued an appropriate curative instruction.

### d.    60-Month Sentencing Determination

Kitterman argues that the district court committed procedural error in determining the recommended sentence under the Guidelines based on a $120,000 loss determination and this error influenced the ultimate sentence of 60 months.  She also argues that the sentence is substantively unreasonable.  The government

8

concedes that the $120,000 "figure was not reflected anywhere in the evidence and appears to have been an arbitrary calculation." It argues, however, that any error is harmless for two reasons: first, it believes the district court should have applied a *greater* loss amount; and second, according to the government, the district court would have imposed the same sentence independent of the sentencing guidelines calculation. The government also argues that the 60-month sentence is substantively reasonable.

In this case, several different figures were argued as appropriate loss amount figures, including: $90 million based on an asserted intended loss from the Ponzi scheme at the time of Kitterman's deceptive telephone call; $63 million based on the actual loss when the scheme imploded; $25 million allegedly induced into the Ponzi scheme by Kitterman's fraudulent phone call; and, as Kitterman contends, zero based on the loss amount actually attributable to the call. The district court was painstaking in its consideration of this issue and ultimately settled on what it considered to be "a more accurate figure" of $120,000. In reaching that figure, the district court concluded that Kitterman had knowledge that she was attempting, through false pretenses, to extract settlement money from multiple defendants for lawsuits that Rothstein had purportedly brought and that to attribute zero intended loss to her would have been "incorrect."

9

While we acknowledge the diligent efforts of the district court to find an accurate loss figure under the challenging circumstances of this case, the law requires the existence of "reliable and specific evidence" beyond surmise to justify a loss amount determination. *Medina*, 485 F.3d at 1304. Neither party has pointed to any evidence to justify the district court's determination of a $120,000 loss in this case, nor have we been able to find such support in the record. Accordingly, we conclude that the district court erred in its loss determination.

Nevertheless, this error was harmless. The district court indicated that it would have imposed the same sentence notwithstanding the guidelines calculation. Specifically, the district court explained that it "want[ed] to be very clear" that the guidelines would not "make[] a difference to the sentence" and it stated that "the sentence would have been the same after considering the factors in Title 18, Section 3553(a)." In view of these definitive pronouncements, the district court's additional statement that it "think[s]" it would have reached the same result independent of the guidelines does not evince equivocation.

The district court's sentence of 60 months is also substantively reasonable. In this case, had there been no loss, the parties agree that the guidelines suggested a sentence of 8–14 months. The problem for Kitterman is that the guidelines are intended for normal cases and, for a number of reasons, her case is anything but.

10

First, Kitterman impersonated an official of the Florida Bar.  Second, as the district court explained, this case will put people on notice that if "they do a fraud, and at the time they do it, they don't appreciate the consequences of that fraud, there will be consequences if they are apprehended."  Third, while it is perhaps impossible to estimate what value Kitterman ascribed to the Bar complaints, the district court was correct that "it would blatantly be wrong to say [the intended loss] had no value."  Thus, a zero loss here does not, as might normally be the case, suggest that Kitterman's intent was less pernicious.  Fourth, this case is unusual because, as the district court noted, Kitterman was a lawyer and should have appreciated that "what [she was] doing is wrong."  Fifth, Kitterman's sentence is also justified by the fact that Steven Caputi—who posed as a banker to deceive investors but who also did not know about the Rothstein Ponzi scheme—received a similar sentence of five years.  Finally, Kitterman's sentence is significantly below the total statutory maximum of 60 years imprisonment for the three wire fraud convictions. *See United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014) (supporting "a significant upward variance from the top of [a defendant's] guideline range" based, in part, on the fact that "his sentences for each count were . . . below the respective statutory maximums").

11

## CONCLUSION

For the foregoing reasons, Kitterman's conviction and sentence are **AFFIRMED**.